# Wytheville

EDWARD SHIELD V. MARY BROWN AND BENJAMIN BROWN.

June 11, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*H. Carter Redd* and *Smith & Gordon,* for the appellant.

*B. H. Turnbull* and *Willis D. Miller,* for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

This suit was instituted by Mary Brown and Benjamin Brown against Edward Shield, for the purpose of ascertaining the true statement of account between the parties, due by reason of their business relations which began in the year 1914 and continued to the year 1933.

The bill alleges that numerous business transactions were had between the parties, and while not as specific as

it might be, it sufficiently sets forth the various transactions consummated. The bill was filed on the 8th day of May, 1933, the cause matured for hearing, and the bill taken for confessed at the second June Rules, 1933. On the 31st day of July, 1933, a decree of reference was entered, directing the commissioner in chancery to enquire into and report in what amount, if any, the defendant was indebted to complainants. Before the execution of this decree, defendant, on the 1st day of August, 1933, obtained leave of court to file his answer. The answer denied the allegations of the bill and affirmatively set up the defense that on the 1st day of November, 1932, the complainants, by a written agreement, had settled all matters in controversy between the parties.

After an exhausive hearing, the commissioner filed his report setting forth that Shield was indebted to complainants in the sum of $6,967.28. Upon exception to the report, the chancellor reduced the amount of interest found by the commissioner and entered a decree against Shield in the principal sum of $6,590.30.

It is assigned as error that the court erred in not sustaining respondent's plea of the statute of limitations.

There is no merit in this assignment of error, for the reason that, in our opinion, no proper plea of the statute of limitations was filed by respondent, nor was the question of the statute of limitations urged before the court or the commissioner. The only reference to the question of limitations is found in the answer of respondent. The reference now relied upon is as follows:

"This Respondent further answers and says that the transactions and matters referred to in Paragraph 1, 2, 3 and 4 of the Bill are not only closed transactions, as set forth in said contract, but are transactions which are barred by the Statute of Limitation had there been no such contract as 'Exhibit A' herewith."

That respondent did not rely upon the statute of limitations in the lower court is evidenced by the fact that he did rely upon the alleged contract designated as "Exhibit A."

■ While it is true that the same strictness of pleading is not required in equity as at law, and the question of limitations may be raised in general terms in the answer, it is nevertheless incumbent upon the defendant to apprise the plaintiff that the statute is relied upon, and the better practice is to allege such facts which indicate that the statute is applicable. *Tazewell's Ex'r* v. *Whittle's Adm'r,* 13 Gratt. (54 Va.) 329, 344.

■ There is in the language contained in the answer no intimation that the statute of limitations would be relied upon. As we view the record, the question of limitations has been relied upon for the first time in this court. The issue is presented too late, even if there were any merit in it.

The next assignment of error is that the court erred in not dismissing complainant's bill or transferring the cause to the law side of the court.

This assignment raises for the first time the question of jurisdiction. It is virtually conceded by counsel for Shield that no motion was made to transfer the cause to the law side of the court; that no question of jurisdiction was raised in the lower court. The main reliance of defendant is found in the contention, that upon the face of the bill it appears that complainants had a complete remedy at law, and therefore, equity is without jurisdiction.

■ It has been repeatedly held by this court that the question of jurisdiction may be taken advantage of for the first time in the appellate court. *Boston Blower Co.* v. *Carman Lumber Co.,* 94 Va. 94, 26 S. E. 390.

■ Without setting forth the bill of complaint in its entirety, we deem it sufficient to state that the bill sets forth sufficient matter to warrant the enquiry of a commissioner upon the question of an accounting between the parties. Much of the enquiry was devoted to the books of account kept by the defendant. The transactions between the parties were complicated and covered a long period of years; all the parties were people well advanced in years, and the report of the commissioner shows that only

after diligent search and enquiry was it possible to reach a conclusion in the matter.

Defendant's petition for appeal is a concession that the many and varied transactions had between the parties were obscured by doubt. In the petition we read:

"There are many and varied transactions had between the plaintiffs and defendant dating from 1913 to 1934 as shown by the evidence, (R., p. 110) (Mary Brown): Q. 'You have been borrowing money from him for twenty years?' A. 'It seems so,' and allegations of the bill, paragraph four, page four; and it is evident the plaintiffs do not know what has occurred or what they owe. Their allegations and evidence deals in generalities and unfortunately the defendant, 84 years old, and nearly blind, could not, on account of his advanced age and physical and mental condition, give much assistance to his attorney in his case. * * * The transactions are as stated in the bill and shown by the evidence, numerous and varied, commencing prior to 1915. There are notes and accounts due defendant by plaintiffs for the purchase of wood, land, mules, saw outfit, truck, etc. The transactions are too numerous to detail, some of them with the brother-in-law of Brown, his sister and some other members of the family at the request of the Browns and for them, in all of which Mr. Shield is advancing and putting up money for them, even paying taxes and insurance."

Accounting between parties has always been the basis for equity jurisdiction. "Granting it to be true, as contended, that appellee had a complete and adequate remedy at law, it is equally true that the existence of a remedy at law cannot deprive courts of equity of jurisdiction in a matter that comes within the scope of their elementary jurisdiction." *Hull* v. *Watts,* 95 Va. 10, 13, 27 S. E. 829, 830.

In *Iron City Bank* v. *Isaacsen,* 158 Va. 609, 164 S. E. 520, 525, Justice Epes said:

"Where some phase of the case alleged in a bill in chancery presents a good ground for equitable relief, *and*

the court has acquired actual jurisdiction of all the parties, or of the *res,* necessary for the granting of some of the equitable relief to which the allegations of the bill entitle the complainant, a court of chancery may go on to a complete adjudication of the cause, even to the extent of establishing legal rights and administering legal remedies, which would otherwise be beyond the scope of its authority. In each such case the court is vested with a sound discretion to determine upon the facts and circumstances of the particular case, whether it is better to relegate the parties to a court of law for the establishment of their legal rights and the administration of legal remedies, or to go on and end the litigation by giving complete relief in the chancery cause. *Walters* v. *Farmers Bank,* 76 Va. 12, 20; *Shaw* v. *G. B. Beaumont Co.,* 88 N. J. Eq. 333, 102 A. 151, 2 A. L. R. 122. But generally speaking, in such a case it will not send the parties back to a court of law, but will retain jurisdiction for all purposes, and do complete justice between the parties. This is true even where the proof may show that the complainant is not entitled to the equitable relief prayed, or that subsequent to the filing of the bill need for equitable.relief has ceased to exist."

In our opinion the above rule is the proper one to apply in this case.

It would serve no good purpose to prolong this opinion by a review of the evidence. It is replete with contradictions. The report of the commissioner has been confirmed by the learned chancellor, and the settled law is that this action is entitled to great weight.

In *First National Bank of Lexington* v. *Weinberg,* 165 Va. 433, 182 S. E. 250, 253, it is said:

"In the face of the commissioner's conclusion, approved by the court, we would not be justified in reversing the judgment, unless it clearly appears that the commissioner has erred. The consistent holding of this court has been to attach great weight to the findings of a special commissioner whose report has been confirmed by the trial court."

See *Stimpson* v. *Bishop,* 82 Va. 190; *Boston* v. *Shackelford,* 162 Va. 733, 175 S. E. 625 *Clevinger* v. *County School Board,* 139 Va. 444, 124 S. E. 440.

Upon the whole case, we are of opinion that appellant has not been prejudiced by the decree of which he is complaining.

*Affirmed.*

HUDGINS, J., dissenting.

My views of this case are so different from those expressed in the majority opinion, I deem it necessary to restate the facts.

The action of the trial court in overruling the demurrer to the bill can be sustained, if at all, only on the theory that during a period of more than 20 years there had been numerous transactions between the parties, and that the accounts had been so confused and complex, that the aid of a court of equity was necessary to ascertain the true status of affairs. The prayer is "that a true statement of accounts be had between your complainants and the defendants; that should said accounting show that defendant is indebted to complainants in any amount, that judgment be given for said amount."

In view of these allegations and prayer, we would expect to find in the commissioner's report a statement of debits and credits. While the commissioner's report in this case refers to several transactions between the parties, the findings are restricted to only one item; namely, the alleged failure of the Browns to receive full consideration for a note bearing date August 13, 1919, payable to Edward Shield in the sum of $4,128. Mary Brown testified that she received $900 of this amount, and that she had been incorrectly charged with the difference, or $3,228. The commissioner, on Mary's Brown's uncorroborated testimony, found that she was correct in this statement, and the trial judge entered judgment for her and her husband, against Shield, for $6,590.30, which included interest from August 13, 1919, until the date of judgment.

I cannot concur in this conclusion for the following reasons: (1) Mary Brown is contradicted by the note and deed of trust executed by her, and her husband, at the time. (2) By the positive testimony of J. M. Turner, who acted as her attorney, and the attorney for Shield at the time the note and deed of trust were prepared. (3) By the testimony of Shield.

While Shield could not recall the full consideration that he had given the Browns for the $4,128 note, and deeds of trust, he did state that it included the $900 which Mary Brown admitted she received, and the purchase price of a truck, the exact amount he could not remember. He did not keep an accurate set of books, and his books didn't show any consideration for this note. Mary Brown produced a printed form of a negotiable note, with the amount, date, and payee blank, but signed by her and Benjamin Brown. She stated positively that this was the note signed by her and her husband in August, 1919, and which she had left with Shield for him to fill in the exact sum which he was to advance her in the purchase of some cord wood; that upon her request in 1932, Shield had returned this note, with some other papers, to her. It was convincingly established that this form of note was not printed until 1920. The exhibit, instead of corroborating Mary Brown, thus clearly showed that she was mistaken.

Even if we disregard the written evidence which contradicts Mary Brown, the positive testimony of Mr. Turner, that he prepared the $4,128 note, as well as the deed of trust securing it, and that Mary Brown and her husband executed the same in his presence, and accept Mary Brown's testimony on the subject as true; still she is not entitled to recover on this item, for the following reasons. She admitted that in 1921, she and her husband owed Shield $4,400 made up of the following items: The $900 obtained from Shield on August 13, 1919, and $3,500 evidenced by several other notes, with interest on $3,000 from August 4, 1915, and on $500 from January 9, 1917, payments of which were secured by three deeds of trust, in

which she and her husband conveyed to J. M. Turner, as trustee, 11.9 acres of land located on the Richmond-Petersburg turnpike, Chesterfield County, Virginia.

In April of that year, that is 1921, she, her husband, and Mr. Shield, went to Mr. Turner's office, and there she informed him that she could not pay the indebtedness, and joined in Shields' request, to Mr. Turner, to sell the land under the deed of trust. Acting on this request Mr. Turner sold the property at public auction, at which sale Shield became the purchaser for $5,000, which sum was not sufficient to pay the principal and interest at that time due and owing to Mr. Shield. Turner testified, and it is not denied, that Mary Brown had decided to go into bankruptcy, as she was not able to pay the judgments which had been obtained against her, and other obligations she was owing. The property stood in Shields' name from 1921 to 1923. What happened during the intervening two years, no one stated.

There is filed as an exhibit, a contract bearing date December 24, 1923, which is signed by S. P. B. Stewart, J. H. Blackwell, Mary Brown and Benjamin Brown. In this contract Stewart and Blackwell agreed to consummate the purchase from Shield of the 11.9 acres, for the sum of (about) $12,500. Stewart and Blackwell were to divide the property into streets and lots, and offer it for sale as a subdivision. They were to receive one-half the profits, and to pay the other one-half to Mary and Benjamin Brown. This contract was performed. Mary and Benjamin Brown received as their share of the profits $3,325.77, and in addition 20 lots subject to liens totaling $2,264.22.

In October, 1925, Stewart and Blackwell made a complete report of their transaction in the sale of this property. The report shows that Mary Brown had objected to the amount paid Shield, and that upon this being called to Shield's attention, he had adjusted the matter by returning to Mary Brown $218.

When Stewart and Blackwell became interested in the

property, title was examined, and it seems that the title examiner reported that Mr. Turner had made some mistake in the deed, by which he, as trustee, had conveyed the property to Shield. Turner testified that he had sold the property under the fourth deed of trust held by Shield dated August 13, 1919, securing the payment of the note of $4,128; that when this mistake was called to his attention he explained the matter to Mary and Benjamin Brown, and that they united with him in executing a deed of correction to Shield, and this deed of correction made specific reference to the $4,128 note; another written document inconsistent with the present oral testimony of Mary Brown.

No attempt was made, by either party to the cause, to explain how they arrived at the amount of the purchase price for which Shield had agreed to sell the 11.9 acres to Mary and Benjamin Brown, through Stewart and Blackwell, except that Shield had agreed to let her repurchase the property for the full amount of the indebtedness which she and her husband owed to him. The only part of the consideration, which she now questions is the $3,228 which she claims she has never received from Shield. In the absence of a specific charge of fraud, clearly and satisfactorily proven, is a court of equity going to permit one party to a contract of sale, ten years after a full and complete settlement has been made, to reopen the sale and fix a different and lower price than that stated in the written contract of sale? The evidence shows that Mary Brown is no fool. She seems to have had numerous business transactions, not only with Shield, but with other people, involving comparatively small amounts. Is it probable that a person accustomed to trade in small sums should make a mistake of as large a sum as $3,228, and let that mistake go for fifteen years without discovering it?

From this point on I will assume that the majority opinion is right in accepting the statement of Mary Brown, and that Shield is indebted to her, and her husband, for

$3,228, with interest from August 13, 1919. Still there should be no recovery in this case for the following reasons, and I will base these reasons on Mary Browns own testimony.

She stated that on June 15, 1929, she had another settlement with Shield. This settlement took in "every little odd and end that we owed him." On that date, she and her husband were indebted to him in the sum of $4,500, for which she executed a note secured by a deed of trust on a part of the 11.9 acres of land which she had acquired at the time it was subdivided and sold. She further admits that she failed to pay this note, or any part of it. At Shield's request, the trustee, on September 23, 1932, sold the property under the deed of trust, at which sale it was cried out to Shield for the sum of $2,300.

On the date of sale the sum due Shield was $4,500 plus $518 accumulated interest. The trustee found, and paid back taxes on the property totaling $210.15, which including his expenses of sale, amounted to $343.68. The total of these sums, or $5,361.68, represents the total outlay made by Shield in this transaction. Of course he had title to the lots, and a claim against Mary and Benjamin Brown for the deficiency, which amounts to $3,923.36, as of September 23, 1932, from which he was entitled to a judgment against Mary and Benjamin Brown. The commissioner entirely ignored this obligation, admittedly due to Shield, and this action is now approved in the majority opinion. Shield testified that Mary and Benjamin Brown owed him $1,900, for which in 1930 they gave him a chattel mortgage on two mules, a cut-off saw, and a truck; that this mortgage was subject to a credit of $525, and that the Browns owed him the difference, or $1,375. Mary Brown testified that the balance due on this chattel mortgage was $300. The commissioner disregarded the testimony of Mary Brown and Shield, and allowed Shield nothing on this item.

After the sale, in September, 1932, Shield, under a written contract and lease, permitted Browns to remain

in possession of the property with an option to purchase it provided the purchase money was paid on or before October 31, 1933. The lease provided that they should pay $25 per month rental, in advance, and in the event that the Browns exercised their option, and purchased the property, then the amount paid as rent should be credited on the purchase price. The Browns failed to exercise their option, or pay the monthly rental. Shield notified them to vacate the premises. This they failed to do. He thereupon instituted an action of unlawful detainer. The record is silent as to the outcome of this action. I mention it simply because this seems to be the origin of this whole controversy.

I repeat, the judgment of the trial court is based wholly on the uncorroborated testimony of Mary Brown, and self serving declarations filed therewith, testimony given fifteen years after the transaction in question, contradicted by, and varying terms of four written instruments, executed by her and her husband. Even if her statements be taken as true, the admitted amount of indebtedness which she states is owing by her, and her husband to Shield, is entirely ignored. If they are entitled to recover anything, it is a serious question whether it should be for their benefit, or for the benefit of unpaid creditors.

No one can read the record in this case without reaching the conclusion that Mary and Benjamin Brown are insolvent, and yet the majority opinion approves a judgment for $6,590.30, pronounced in a court of equity against Shield, a solvent person, in favor of Mary and Benjamin Brown, admittedly insolvent, and indebted to Shield, for an amount equal to if not larger than the amount of the judgment.

With due deference to the views of my associates, I am firm in the conviction that the judgment is clearly wrong, and should be reversed.