# Richmond

LAURA HEFLIN v. E. G. HEFLIN.

'April 21, 1941.

Record No. 2331.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

*William W. Butzner,* for the appellant.

*S. Bernard Coleman* and *Frank M. Chichester,* for the appellee.

Gregory, J., delivered the opinion of the court.

In November, 1927, Mrs. Laura Heflin filed a bill in equity against E. G. Heflin, her husband, praying that she be granted alimony and counsel fees, but not asking for a divorce. She alleged that her husband had deserted and abandoned her after becoming infatuated with another woman; that all marital relations had been severed by him without justification; that he possessed considerable property consisting of real estate of the value of more than $200,000 as well as valuable personal property; that he was amply able to supply her with adequate maintenance and support; and that she was without funds to provide for her support or to pay court costs and counsel fees.

A short time after the maturity of the bill of complaint the court entered an order requiring Mr. Heflin to pay his wife $250 each month for her maintenance and support and to pay $350 on account of counsel fees. He paid the counsel fees and for several years made the monthly payments to his wife.

In 1940 Mr. Heflin was behind in the payments. His default in principal and interest aggregated $7,290. At that time Mrs. Heflin filed a petition in the original cause of *Laura Heflin* v. *E. G. Heflin,* reciting the former proceedings, the default of Mr. Heflin in the payments, and asking that he be adjudged in contempt of court for failure to comply with the order of court; that a receiver be appointed to collect the rents due him from real estate and to apply the rents to the obligation due her; that an

attorney's fee be allowed her counsel; that the amount in default be fully paid; and that he be required to make the future monthly payments promptly.

Mr. Heflin, by counsel, filed a written motion asking that the original bill of complaint filed in 1927 and the petition filed in 1940 be dismissed and the order entered in 1927 directing the payment of the monthly instalments to Mrs. Heflin vacated and annulled on the ground that the court had neither active nor potential jurisdiction of the matters and allegations contained in the original bill of complaint; that the exclusive original jurisdiction of this case was vested in the Juvenile and Domestic Relations Court of the city of Fredericksburg; and that a court of equity has no jurisdiction to entertain a bill for alimony without a prayer for a divorce.

After a full hearing upon the motion to dismiss, the lower court reached the conclusion that equity had no jurisdiction to entertain a bill for alimony alone and that, unless a divorce were asked for, Mrs. Heflin's sole remedy was to proceed before the Juvenile and Domestic Relations Court under §§1936, *et seq.*, of the Code. The original bill and the petition were dismissed and the order requiring Mr. Heflin to pay monthly instalments of alimony was vacated and annulled. The decree effectuating the decision of the lower court is now challenged by this appeal.

In Virginia, has a court of equity ever had inherent jurisdiction to entertain a suit for separate maintenance of a deserted wife where no divorce is sought? If that question be answered affirmatively, has such jurisdiction been abridged or nullified by statute?

Prior to the birth of this nation, in England the adjustment of rights and duties between husband and wife was the province of the ecclesiastical courts. Those courts granted *a mensa* decrees and as an incident awarded alimony, but it is not quite clear whether or not those courts granted separate maintenance to the deserted wife where no divorce was prayed for. See

note in American and English Annotated Cases, Vol. 28, p. 1132.

The earliest Virginia case where separate maintenance was sought by the deserted wife is *Purcell* v. *Purcell*, 4 Hening & Munford (14 Va.) 507. There the confusion in the English courts caused the chancellor to observe: "If the jurisdiction of this court were now to be settled upon English precedents, there might be some doubt about the question, from the cases, as brought into one view, by Mr. Fonblanque; but I shall leave this clashing of English judges to be reconciled among themselves, and take up the question upon first principles."

The jurisdiction of the equity court to entertain a bill for maintenance and support was sustained. The chancellor had this to say: "I hold, that in every well regulated government there must somewhere exist a power of affording a remedy where the law affords none; and this peculiarly belongs to a Court of Equity; and as husband and wife are considered as one person in law, it is evident, that in this case the law can afford no remedy; which is universally admitted to be a sufficient ground to give this Court jurisdiction; and therefore it must entertain the bill, if there be sufficient proof of the marriage."

The *Purcell Case* was probably the first in this country to hold that equity had jurisdiction in a case where support was sought of a husband by a deserted wife.

The question was again discussed in *Almond* v. *Almond*, 4 Rand. (25 Va.) 662, 15 Am. Dec. 781. There the bill was dismissed because it sought to have the court assign specific personal property as alimony. This could not be done, but the court entered into an enlightening discussion of the jurisdiction of equity to award alimony to a deserted wife. It recognized such jurisdiction in no uncertain language. What was said by the court has been recognized not only in Virginia but in many other States as the source of authority for the inherent jurisdiction of equity courts in such cases. The follow-

ing quotation from the *Almond Case*, though probably dictum, is considered the foundation upon which Virginia recognizes the inherent equity jurisdiction to award alimony when no divorce is sought: "I believe that in practice, the County Courts, sitting as Courts of Equity, have assumed the power of giving separate maintenance in cases of separation; but, by what rule they have been regulated, I know not. The jurisdiction was sustained by Chancellor of the Richmond Chancery Court, in *Purcell* v. *Purcell*, 4 Hen. & Munf. 507; and the reasoning of the Chancellor on the point of jurisdiction seems to me sound. If there be a contract for separation, it is conceded on all hands, that equity might, in proper cases, enforce that contract. But, suppose a husband to turn his wife out of doors, or to treat her so cruelly that she cannot possibly live with him; suppose him to persevere in refusing to take her back, or to provide a cent to feed and clothe her. Surely, in a civilized country, there must be some tribunal to which she may resort. She cannot be out of the protection of the law; an outcast, dependent on the charity of the world, while her husband may have thousands, and she may have brought him all. I would, in such cases, unquestionably, stretch out the arm of Chancery, to save and protect her."

In 1827, a short time after the decision in the *Almond Case*, Virginia empowered certain courts to grant *a mensa* divorces and to award alimony as an incident.

The history of our divorce statutes and the power to award alimony was recorded at length by Mr. Justice Epes in *Gloth* v. *Gloth*, 154 Va. 511, 153 S. E. 879, 71 A. L. R. 700.

In *Latham* v. *Latham*, 30 Gratt. (71 Va.) 307, the inherent equity jurisdiction is recognized and a portion of what was said in the *Almond Case* is quoted.

In the *Latham Case* the bill was dismissed and the wife refused separate maintenance because she was at fault, but unquestionably the court again recognized the

jurisdiction of courts of equity to allow alimony without decreeing a divorce.

The jurisdiction of equity was squarely invoked in *Francis* v. *Francis,* 31 Gratt. (72 Va.) 283. There the deserted wife instituted a suit for alimony and the court decreed that she was entitled to $300 per annum payable $25 monthly. The husband appealed and, before the appeal was heard, he died. This court upon appeal held that whatever amount had accrued prior to the husband's death was recoverable as alimony, although the monthly accruals ceased upon his death. The equity jurisdiction obtained in that case, though the suit was one purely for alimony.

According to *Bray* v. *Landergren,* 161 Va. 699, 172 S. E. 252, equity courts have since an early date exercised jurisdiction to decree alimony independently of the divorce statutes. A great many authorities are cited and discussed in the opinion.

In Barton's *Chancery Practice,* vol. 1 (2d ed.), at p. 335, the author says, ''Alimony, generally regarded as an incident to a suit for a divorce, may in Virginia be granted independently of any such suit where the misconduct of the husband drives the wife from her home, or he turns her out of doors, or perhaps wherever a divorce from bed and board or a restoration of conjugal rights would be decreed.''

In 1 Minor's Institutes (4th ed.) 308, the eminent author says, ''In Virginia not only is alimony granted as incidental to divorce of either kind, with the largest discretion as to the estates of the parties, but it may be granted by the court of chancery, independently of any divorce, or any application for one, as where the misconduct of the husband drives the wife from the home, or he turns her out of doors, or perhaps wherever a divorce from bed and board, or a restoration of conjugal rights would be decreed had they been asked for.''

Mr. William Minor Lile, editor of the Virginia Law Register, wrote an interesting article on the subject. It

may be found in 7 Va. Law Reg., p. 219. He says, ''That a separate suit for alimony alone (separate maintenance) may be maintained in Virginia, is, of course, elementary.'' He refers to the early Virginia cases of *Purcell* v. *Purcell, supra,* and *Almond* v. *Almond, supra.*

In *Lang* v. *Lang,* 70 W. Va. 205, 73 S. E. 716, 38 L. R. A. (N. S.) 950, Ann. Cas. 1913D, 1129, is found this interesting observation: ''A Virginia chancellor was perhaps the first to promulgate this doctrine (the inherent equity jurisdiction to award alimony). *Purcell* v. *Purcell,* 4 Hen. & M. (Va.) 507. Judge Tucker says the decision in that case is sound. Tucker's Com. Book 1, ch. 9, page 101. Justice Story cites it and says: 'There is so much good sense and reason in this doctrine that it might be wished it were generally adopted.' 2 *Equity Jurisprudence, supra.* The doctrine was again affirmed in *Almond* v. *Almond,* 4 Rand. (Va.) 662, 15 Am. Dec. 781. It is distinctly recognized in the opinion in *Latham* v. *Latham,* 30 Gratt. (Va.) 307. Judge Johnson seemingly approves it in *Stewart* v. *Stewart,* 27 W. Va. 167.''

*Kiser* v. *Kiser,* 108 Va. 730, 62 S. E. 936, is relied upon as authority for the proposition that the divorce statutes have superseded the equity jurisdiction. It is true that Judge Keith in delivering the opinion said: ''The better opinion may be, that since the courts have been authorized to grant divorces, our statute law upon the subject is to be looked to as the sole fountain of jurisdiction over persons and their property with respect to allowance of alimony to be exercised in proceedings for divorce; and if that be true, then the remark of Judge Staples is also true, that those statutes only allow alimony as incident to a decree for a divorce.''

It is quite clear from reading the opinion in that case that the language quoted was not necessary to a decision of the case. In any event, the cases of *Francis* v. *Francis, supra, Latham* v. *Latham, supra, Gloth* v. *Gloth. supra,* and *Bray* v. *Landergren, supra,* were decided after the passage of the divorce statutes in 1827. The

*Bray* and *Gloth Cases* do not refer to the *Kiser Case*, though they were decided subsequent to the *Kiser Case*. The *Bray* and *Gloth Cases* were thoroughly considered and the former cases reviewed at length. Undoubtedly the inherent jurisdiction of equity was recognized. These cases greatly weaken the *dictum* in the *Kiser Case*.

In 27 Am. Jur., *Husband and Wife,* §402, the principle is clearly stated: "It is the rule in some jurisdictions, based upon the authority of English cases, that a court of equity or one exercising the jurisdiction of such a court, aside from statutory authorization, has no original or inherent jurisdiction to entertain an independent suit for separate maintenance or alimony, but can make an allowance therefor only as incidental to a suit for divorce or separation. According to the great weight of authority in this country, however, especially according to the more recent decisions, a court of equity is regarded as having inherent jurisdiction to entertain, independent of any suit for divorce or separation or of a suit to enforce a contract of separation, a suit by a wife for alimony, support, maintenance, or separate maintenance out of the general estate of the husband, as distinguished from that of his wife coming to him under the common law or out of her own fortune. This doctrine is of purely American origin and growth. Equity has such jurisdiction where the statute gives a wife a right to sue and be sued, at law or in equity, with or without her husband being joined as a party.

"The mere fact that statutory provision has been made for awarding alimony when divorces are granted does not exclude, by implication, any jurisdiction the courts may have had to enforce the fulfilment of that obligation in an action independent of a proceeding for a divorce; for it cannot be presumed that the legislature, while carefully providing for the continuance of the obligation of maintenance after divorce, intended thereby to cut off any jurisdiction which might be in the courts

to enforce that obligation while the bonds of matrimony still existed.''

And in the same work and section the reason for giving equity jurisdiction is stated thus: ''The reason usually given for the exercise of jurisdiction over an independent suit by a wife for support, separate maintenance, or alimony is the inadequacy of the wife's remedies at law for the enforcement of the legal obligation of her husband to support her. The law recognizes the right of the wife in giving her, under such circumstances, the remedy of obtaining necessaries on his liability, but such a remedy is inadequate, because of its difficulty and circuity, and for other reasons, to the full protection of the right thereby recognized. Such jurisdiction may be exercised notwithstanding absence of jurisdiction or authority to grant limited divorces, or divorces from bed and board. It is said that a denial of such jurisdiction would· expose the courts to the just criticism of having squarely asserted the wife's right to support from her husband, yet of denying her adequate remedy when such support is refused. The assumption of jurisdiction is a matter of necessity for the proper protection of the wife. Furthermore, for equity to deny such jurisdiction tends to a multiplicity of suits. It has also been said that the recognition of the jurisdiction of equity to entertain independent suits for support, maintenance, or alimony is in accord with public policy, which is to discourage and not encourage divorce; to make divorce the only remedy of a wronged or neglected wife obviously tends to encourage it. Also, there may be abundant reasons for not wanting a divorce, such as religious and conscientious principles, or desire to avoid notoriety and scandal for the sake of children, which reasons are controlling with a wife and which the law ought to respect.''

Our conclusion is that in Virginia from an early date equity courts have had jurisdiction to entertain suits for alimony on behalf of a deserted wife even

though no divorce was sought, and that the divorce statutes have, to no extent, impaired or abridged that jurisdiction. That jurisdiction arises because of the inadequacy of the legal remedy provided to enforce a husband's duty to support his wife who may be either unwilling to sue for divorce or lacking in sufficient grounds for such a suit.

Having concluded that the divorce statutes do not modify or destroy the inherent jurisdiction of a court of equity to award alimony to a deserted wife, we must now determine whether or not Chapter 80 of the Code (§§1936-1944a), under the title of *Desertion and Non-Support,* takes away from courts of equity their inherent jurisdiction in such cases.

Mr. Lile, in his valuable work, *Notes on Equity Jurisprudence,* at pages 10 and 11, says: "It is settled that where equity has once taken jurisdiction because of lack of legal remedy, it will continue to exercise the jurisdiction, even though subsequently courts of law have assumed a similar jurisdiction, as the result of statute, or otherwise." And in a footnote on page 11 there appears this quotation: "Equity, like the proverbial turtle, when it once takes hold, never lets loose until it thunders, which thunder is the fulmination of a statute so directing it."

In *Shield* v. *Brown,* 166 Va. 596, 186 S. E. 33, the court quotes from *Hull* v. *Watts,* 95 Va. 10, 27 S. E. 829, as follows: "Granting it to be true, as contended, that appellee had a complete and adequate remedy at law, it is equally true that the existence of a remedy at law cannot deprive courts of equity of jurisdiction in a matter that comes within the scope of their elementary jurisdiction."

In *Filler* v. *Tyler,* 91 Va. 458, 22 S. E. 235, the rule is stated thus: "Courts of equity, having such jurisdiction before enactment of the statute * * * still retain it although the statute may furnish a complete and adequate remedy at law. Courts of equity having once ac-

quired jurisdiction, never lose it because jurisdiction of the same matters are given to law courts, unless the statute giving such jurisdiction uses prohibitory or restrictive words." See also, *Levy* v. *Davis*, 115 Va. 814, 80 S. E. 791; *Nicholas* v. *Nicholas*, 169 Va. 399, 193 S. E. 689; *Steinman* v. *Vicars*, 99 Va. 595, 39 S. E. 227; *Johnson* v. *Black*, 103 Va. 477, 49 S. E. 633, 106 Am. St. Rep. 890, 68 L. R. A. 264; *Herring* v. *Wilton*, 106 Va. 171, 55 S. E. 546, 117 Am. St. Rep. 997, 7 L. R. A. (N. S.) 349.

Unless the desertion and non-support statutes (§§1936-1944a) prohibit and restrict the long-established inherent jurisdiction of the equity court such jurisdiction remains unaffected by their enactment even though they provide the machinery for the punishment of a husband who deserts and fails to support his wife, leaving her destitute and in necessitous circumstances. We do not think there is any language in the statutes which could be considered as impairing or destroying the equity jurisdiction. Section 1936 creates the crime of desertion and non-support. It provides that if any husband, "without just cause desert * * * or fail to * * * support * * * his wife * * * (he) shall be guilty of a misdemeanor, and on conviction thereof, shall be punished by a fine of not exceeding $500 * * * ," or in lieu of the fine he may be required to work on the road force for not more than twelve months at $1 per day for the benefit of the wife. In lieu of the fine he may be required to suffer a forfeiture of not more than $500 which may be paid to the wife. If he is physically unable to work on the roads the wife, of course, would not receive his wages.

Section 1937 provides for the institution of the proceeding, and §1937a provides that the jurisdiction in certain cases shall be in the juvenile and domestic relations court. Such court "shall have exclusive original jurisdiction in all cases arising under this act."

The quoted language is relied upon as taking away from courts of equity their inherent jurisdiction to require the husband to provide for the support of his de-

serted wife. In other words, it is contended that this language is prohibitory and restrictive and abrogates the equity jurisdiction. This was the view of the trial court. We are unable to agree with that conclusion.

Under the desertion and non-support statutes the wife is compelled to have her husband adjudged guilty of a crime and must be destitute and in necessitous circumstances before she can receive the meager wages he earns for work on the road force. This crime must be proven as all other crimes—the guilt of the husband must be shown beyond all reasonable doubt. If he is found guilty he may appeal, but no provision is made for the deserted wife's appeal if he is not found guilty.

These statutes do not, in terms or otherwise, wipe out the other remedies of a deserted wife. They do not purport to embrace all other remedies for support which may arise, such as those under the divorce statutes and those brought under the inherent jurisdiction of an equity court for separate maintenance alone. The statutes embrace only those cases "arising under this act," which means cases in which deserted wives wish to prosecute their husbands criminally and as an incident, if found guilty, to receive their wages if they are physically able to work on the roads. It is an effective means to require them to perform their legal duty.

The statutes provide an additional and quick remedy, in cases arising under it, to punish the guilty husband for his offense and at the same time prevent the wife from becoming a public charge. They give no civil remedy.

The obligation of the husband to support his wife exists regardless of whether or not she is destitute and in necessitous circumstances. If she be not in such circumstances she could not proceed under the non-support statutes and if those statutes have abrogated the general inherent equity jurisdiction to entertain a suit for separate maintenance her only recourse would be to institute a suit for divorce. This she might not want to do, or,

perhaps, she might not have adequate grounds for a divorce. Without the right to proceed in equity for separate maintenance, her remedy would be inadequate.

In *Wright* v. *Wright,* 164 Va. 245, 178 S. E. 884, and *Boaze* v. *Commonwealth,* 165 Va. 786, 183 S. E. 263, we held that the desertion and non-support statutes were criminal in form but compensatory to the wife, and that she has two remedies and must elect to proceed under either the non-support statutes or the divorce statutes. No mention was made of any other remedy the deserted wife might have.

It is vigorously urged that in these two cases this court has decided that a deserted wife has only two remedies to compel her husband to provide support for her. First, she may have him prosecuted for non-support under §§1936 *et seq.,* or second, she may institute a suit for divorce and as an incident obtain support. These cases are also deemed to hold that her remedies are purely statutory and that equity has no jurisdiction to require the husband to pay his wife alimony unless she asks for a divorce.

What the court meant was that there were only two statutory remedies. It did not mean that there was no independent equitable remedy to enforce payment of alimony. Surely this court in the *Wright* and *Boaze Cases* did not intend to reject the principles announced in the early cases and reiterated in the recent ones without even referring to them. We do not agree with counsel for appellee when he says the *Wright* and *Boaze Cases* decide that equity has no jurisdiction to award alimony when no divorce is sought. Those cases do not even refer to the general inherent jurisdiction of an equity court.

We conclude that the chancery side of the corporation court of Fredericksburg had jurisdiction to consider the original bill and petition filed in this cause; that the desertion and non-support statutes did not impair that jurisdiction; that the court was in error when it dismissed the bill and petition; and further that the

court was in error when it set aside and annulled the order it had entered awarding the complainant alimony and attorney's fees. The bill, petition, and order for alimony are reinstated and the prayer of the petition granted. The attorney's fee asked for should be fixed by the trial court.

For these reasons the decree complained of is reversed and the cause is remanded for the entry of the proper decree.

*Reversed.*