## 16528

### MACHADO v. MACHADO
(66 S. E. (2d) 629)

*Mr. Fred D. Townsend,* of Columbia, *for Appellant,*

*Messrs. Henry H. Edens* and *Henry Hammer,* of Colum-
bia, and *Murchison & West,* of Camden, *for Respondent,*

*Mr. Fred D. Townsend,* of Columbia, *for Appellant,* in reply,

August 6, 1951.

August 31, 1951.

OxnER, Justice.

This is an appeal by the husband from a decree granting his wife a divorce a *vinculo matrimonii* on the ground of "constructive" desertion, together with alimony and counsel fees, and awarding her the custody of their two minor children.

The action was commenced by the husband on April 21, 1949. In the original complaint he sought a divorce on the ground of desertion and asked for the custody of the children. Thereafter the complaint was amended by adding adultery, habitual drunkenness and physical cruelty as grounds for the relief sought. The wife denied all of these charges and interposed a counterclaim in the nature of a cross-action, wherein she sought a divorce upon the ground of constructive desertion and asked that she be given custody

of the children. In due course the husband filed a reply denying the material allegations of the counterclaim.

The case was referred to a special referee who, after taking a vast amount of testimony, recommended that the relief sought by the husband be denied; that the wife be granted a divorce upon the ground of constructive desertion; that the husband be required to pay to his wife the lump sum of $2,000.00 as permanent alimony and to her attorneys the sum of $1,500.00 for their services; that the wife be granted the custody of the two minor children, except for two months each summer during which period they should be permitted to visit their father; and that the husband be required to pay the sum of $100.00 each month for the maintenance and support of said children. On exceptions by the husband to the report of the special referee, the case was heard by the resident Judge of the Fifth Circuit, who confirmed the report of the special referee in all particulars except as to the amount of alimony which was raised from $2,000.00 to $2,400.00. The husband has not appealed from the dismissal of his complaint. His exceptions relate solely to the affirmative relief granted his wife.

The divorce statute, Act No. 137 of the 1949 Acts of the General Assembly, 46 St. at L. 216, expressly provides that an action for divorce shall be in the equity jurisdiction of the court. Accordingly, the evidence must be considered in the light of the well settled rule that in an equity case findings of fact by a master or a referee, concurred in by a circuit judge, will not be disturbed by this Court unless it appears that such findings are without evidentiary support or are against the clear preponderance of the evidence. It would serve no useful purpose to undertake a detailed review of the voluminous testimony in the record before us. As usual in cases of this kind, it is filled with charges and counter-charges, some of which are unduly magnified.

The following facts, found by the Referee and Circuit Judge, are amply sustained by the evidence:

Appellant and respondent were secretly married at Plymouth, Massachusetts, on September 11, 1937. They first resided at Cape Cod but soon returned to Camden, South Carolina, where appellant was engaged in business at the time of his marriage. They lived together at Camden until 1947, when they separated. Two children, both boys, were born to this union, one in 1941 and the other in 1943. Discord developed immediately after the marriage. For some unexplained reason, appellant insisted that it be kept secret while respondent was anxious that it be announced. His wishes prevailed and his family was not advised of his marriage until respondent became pregnant with her first child. Soon after the marriage, appellant, actuated by unfounded suspicion and unreasonable jealousy, accused his wife of indiscreetness in associating with other men. When she became pregnant with the first child, he denied his paternity. His attitude toward his wife during this period was very inconsiderate. However, when this child was born, the resemblance to appellant was so striking that his suspicion of his wife's unchastity was whollly dissipated. During the entire period of approximately ten years that the parties lived together, appellant from time to time accused his wife of adultery, and on several occasions publicly. This charge was again repeated when he instituted this suit for divorce. On the trial of the case he named four or five men with whom he says he was convinced that his wife had sexual relations. Both the Master and the Circuit Judge found that these charges of unchastity were without any foundation and there is abundant evidence to sustain that conclusion.

While respondent was pregnant with the first child, appellant carried on extensive correspondence with a woman in Florida and visited her there for four or five days during 1940 or 1941. There is some dispute as to the purpose of this visit. While there is no proof of adultery growing out of this association, the circumstances are somewhat suspicious. Shortly thereafter appellant seems to have become rather attached to his secretary, who was sixteen years

younger than he. She accompanied him to numerous conventions. Their conduct in Camden on various occasions was very indiscreet. Respondent testified that on at least one occasion appellant stated to his secretary in her presence that he loved her more than he did respondent. She complained bitterly of this association and admonished appellant time and again that he would have to make a choice between her and his secretary. Several times respondent assaulted this woman but no serious physical injuries resulted from these encounters. In an effort to remove the source of dissension, appellant, a Catholic, after consultation with his priest, discharged his secretary but soon reemployed her. He has steadfastly maintained that he never had any improper relations with her and there is no satisfactory proof that he did, but the association was a constant source of humiliation and embarrassment to respondent and appears to have been the principal factor in precipitating the final separation of the parties in 1947. We might interpolate here that some time prior to this separation, a young man at Camden commenced courting appellant's secretary and subsequently married her.

In addition to the foregoing misconduct on the part of appellant, his wife asserts that he frequently threatened to kill her, forced her to leave home on several occasions in the middle of the night, and failed to provide her with adequate medical attention and food. The Referee and Circuit Judge concluded that these charges were sustained by the evidence. We deem it unnecessary to determine the soundness of these conclusions. However, we desire to say that the alleged threats were of a general nature and hardly calculated to cause fear of immediate bodily harm, and that the charge that appellant did not properly provide for her does not have strong evidentiary support.

On June 6, 1947, appellant and respondent entered into a separation agreement under the terms of which they agreed to live separate and apart; the two boys were to be placed in a Catholic boarding school at the expense of appellant;

appellant agreed to pay the cost of a course in beauty culture to be taken by respondent in New York City for the purpose of providing her with a means of livelihood; and respondent agreed to forever release and discharge appellant from all obligations growing out of the marriage relation.

As a result of the foregoing agreement, sometime during the month of June respondent left the home of appellant at Camden and moved with the children to the home of her brother at Columbia, South Carolina, where she remained until September, 1947. Notwithstanding the fact that the parties had just entered into a separation agreement, appellant testified, and respondent did not deny, that during this period he spent about three nights each week with his wife in this home. On September 10, 1947, respondent left Columbia and went with the children to New York City for the purpose of taking the contemplated course in beauty culture. The children remained there only a short time and were soon placed in a Catholic boarding school in North Carolina. The record does not disclose how long respondent remained in New York City. She took the course in beauty culture, which was paid for by appellant. Thereafter she left New York City and moved to Charlotte, North Carolina, where at the time of the commencement of this action she was working as a beautician. For two or three years the children have attended the Catholic boarding school in North Carolina and during the summer and on various weekends have lived with their father at Camden.

We shall first determine whether the facts are sufficient to justify a divorce on the ground of desertion. It is apparently conceded that the evidence is insufficient to justify a divorce on any other ground. Counsel for respondent state in their brief: "It is not our contention that the misconduct in the instant case on the part of the husband is a ground for divorce." Nor is there any claim that appellant physically abandoned respondent. The divorce is sought solely on the ground of constructive desertion. It is said that the conduct

of appellant was such as to make life intolerable and compel respondent to leave his home and that after she did so and remained away for the statutory period of one year, she became entitled to a divorce.

The right to the relief sought is vigorously contested by appellant who contends (1) that constructive desertion is not a ground for divorce in this state, (2) that assuming that it is, the evidence in this case does not show a constructive desertion, and (3) that there was no desertion, actual or constructive, because the separation was by mutual consent and under a separation agreement.

We had occasion in the recent case of *Brown v. Brown,* 215 S. C. 502, 56 S. E. (2d) 330, 15 A. L. R. (2d) 163, to relate the history of divorce in South Carolina. As there pointed out, for a long number of years divorce was forbidden by the Constitution of this state. An amendment was adopted in 1949 authorizing a divorce "on grounds of adultery, desertion, physical cruelty, or habitual drunkenness". Const. art. 17, § 3, 46 St. at L. 138. Thereafter an act was passed by the General Assembly regulating the granting of divorces. 46 St. at L. 216. A well-considered and illuminating discussion of this legislation by Professor J. D. Sumner, Jr. will be found in the March, 1951, issue of the South Carolina Law Quarterly.

Appellant asserts that the common and well understood meaning of desertion is physical abandonment, that it was with that understanding that the people of South Carolina authorized a divorce on the ground of desertion, and that they never contemplated or intended that a divorce should be granted on the legal fiction of constructive desertion.

Where desertion is allowed as a ground of divorce, it is almost uniformly held to include constructive as well as physical or actual desertion. Nelson on Divorce and Annulment, 2nd Edition, Sec. 4.14, Vol. 1; Keezer on the Law of Marriage and Divorce, 3rd Edition by Morland, Section 391; 27 C. J. S., Divorce, § 36 (c) ; 17 Am.

Jur., Divorce and Separation, Section 101. No good reason appears why our constitutional amendment should not be similarly construed. We think the construction suggested by appellant is rather strained and wholly unjustified. As stated in *Succhierelli v. Succhierelli,* 101 N. J. Eq. 30, 137 A. 839, 840, "Constructive is rather paradoxical to be sure, the statement is apparently not true, but actually so."

In holding that our constitutional amendment authorizes a divorce on the ground of constructive desertion, we are not unmindful of the fact that the doctrine, when indiscriminately applied, is capable of much mischief. It was doubtless for this reason that the Supreme Court of Mississippi recently stated in *Griffin v. Griffin,* 207 Miss. 500, 42 So. (2d) 720, 722 : "We accept the principle but hold it will not be applied except in extreme cases." Constructive desertion should never be permitted to be used as a subterfuge for obtaining a divorce on a ground not permitted by the Constitution. In an illuminating and scholarly article contained in the Summer 1949 issue of the Maryland Law Review, Mr. Herbert Myerberg aptly stated : "If our courts intend (as they have often declared) to continue to resist the pressure of modern society for an easy escape from the bonds of matrimony, a more conscious effort must be made to keep the fiction of constructive desertion within the legitimate boundaries of it application."

It also might not be amiss to call attention to the fact that while the doctrine of constructive desertion is generally recognized, there is an irreconcilable conflict in the authorities as to the character of misconduct that must be shown to justify a divorce on this ground. Many courts hold that the abandoning party seeking to make a technical deserter out of the abandoned must establish misconduct on the part of the other in itself, and independently, amounting to a ground for divorce. In other words, it is said that if the conduct complained of is not itself a sufficient cause for divorce, the courts cannot by indirection do that which is not authorized

by statute. Among the states adopting this view are Virginia, New Jersey, Kentucky, Illinois and Arkansas. Other courts, such as Connecticut and Maryland, hold that the conduct of one spouse compelling the other to leave may justify a divorce to that other on the ground of desertion, even though such conduct is not a ground for divorce. They hold, however, that it must be of such nature as to render impossible the continuation of the marital cohabitation with due regard for safety, health and self-respect. In view of the conclusion hereinafter stated that the facts in the instant case show that certain essential elements of desertion are lacking, we need not at this time determine which of the foregoing line of cases represents the better view. We are, therefore, not to be understood as now determining whether in establishing constructive desertion, it is necessary for the complaining spouse to show that he or she was compelled to leave the offending spouse because of conduct sufficient in itself to constitute a ground for divorce.

Having reached the conclusion that a divorce may be granted in this state on the ground of constructive desertion, we shall next determine whether the facts in the instant case are sufficient to establish desertion, either actual or constructive. "A number of cases tersely state the essentials of desertion as: (1) cessation from cohabitation, (2) intent on the part of the absenting party not to resume it, (3) absence of the opposite party's consent, and (4) absence of justification." Nelson on Divorce and Annulment, 2nd Edition, Section 4.02, Volume 1, page 64. Of course, the cessation of cohabitation must be for the required statutory period before there can be a divorce on the ground of desertion. Generally speaking, it may be said that there is constructive desertion where an existing cohatitation is intentionally brought to an end by the misconduct of one of the spouses, compelling the other to leave the marital home. All the authorities agree than an intent to desert is an indispensable element. However, it is not a necessary ingredient in constructive desertion that the husband shall entertain, in

connection .with the acts complained of, a settled purpose to drive his wife from him. It is enough if such is the natural consequence of his acts. *Csanyi v. Csanyi*, 93 N. J. Eq. 11, 115 A. 76. The proper rule, as stated, by Mr. Myerberg in the Law Review article heretofore mentioned, "is that intent to terminate the marriage relation may be inferred *prima facie,* as the natural consequence of the offending spouse's misconduct", but that such *prima facie* showing may be rebutted.

We do not think that the requisite intent on the part of appellant to terminate the marriage relation has been shown. Any *prima facie* showing of desertion in this case is rebutted by the evidence. See *Lynch v. Lynch*, 33 Md. 328.

The following appears in respondent's testimony:

"Q. As far as you know there has been only one woman who came between you and Mr. Machado? A. Two. * * * *

"Q. There are no women at the present time keeping you and Mr. Machado apart? A. Not that I know of. I am keeping us apart."

After respondent went to New York, appellant sought on several occasions, without success, to induce her to return. Respondent testified that he told her "that he had in the neighborhood of $45,000.00 to $60,000.00 and if I would come back to him, he would buy a home in New Jersey." It was respondent who suggested the separation agreement and employed a Mr. Johnson, a prominent member of the Camden Bar, to prepare it. Respondent testified: "I went to Mr. Johnson and got separation papers from Joe and refused to live with him." It was under this agreement that respondent voluntarily left the home of appellant in June, 1947. Her departure was, therefore, by mutual agreement and did not constitute a desertion. In Keezer on the Law of Marriage and Divorce, 3rd Edition by Morland, it is said (Section 528): "There can be no desertion where the separation of the spouses is upon mutual consent and

under a separation agreement, and hence the existence of such an agreement may be advanced as a defense to a suit for divorce on the ground of desertion." Although the separation agreement was annulled by the subsequent cohabitation of the parties, it may be properly considered as showing the circumstances under which respondent left appellant's home.

There is another compelling reason for denying the divorce on the ground of desertion. Respondent alleged in her counterclaim that appellant deserted her "some time during the month of June, 1947". Even if there had been a desertion at that time, the resumption of cohabitation at the home of respondent's brother in Columbia terminated the desertion. It is stated by Nelson on Divorce and Annulment, 2nd Edition, Volume 1, Section 4.41, page 143:

"A complete and unconditional resumption of cohabitation puts an end to desertion or abandonment."

Respondent seeks to sustain the charge of desertion under a line of cases in this state which hold that if the conduct of the husband is such as to make cohabitation intolerable thereby compelling the wife to leave, she may charge him with constructive desertion. *State v. Bagwell,* 125 S. C. 401, 118 S. E. 767; *In re Duncan's Estate,* 190 S. C. 211, 2 S. E. (2d) 388; *Holloway v. Holloway,* 203 S. C. 339, 27 S. E. (2d) 457. These and like cases involved actions for support and maintenance. The court properly concluded that under the circumstances mentioned, the husband could not successfully set up as a defense that his wife had deserted him. In other words, the Court declined to permit a husband to set up a claim of desertion growing out of his wife's being compelled to leave his home by reason of his own misconduct. We do not think these decisions control the question before us. Here the wife is seeking *affirmative* relief based on a claim of desertion by her husband. It is incumbent upon her to establish the essential elements of desertion which have been heretofore

noted, some of which need not be shown in an action for separate maintenance.

For the reasons stated, the right of respondent to a divorce is denied. We now consider whether she is entitled to separate maintenance and support.

The causes for which separate maintenance may be granted are not confined to those which constitute grounds for divorce. Accordingly, a court may decree such maintenance although a divorce is denied. Nelson on Divorce and Annulment, 2nd Edition, Vol. 3, Sections 32.10 and 32.12; *Sales v. Sales,* 222 Ky. 175, 300 S. W. 354; *Bradford v. Bradford,* 296 Mass. 187, 4 N. E. (2d) 1005; *Cochrane v. Cochrane,* 303 Mass. 467, 22 N. E. (2d) 6, 138 A. L. R. 341. In actions for divorce, we are limited by the terms of the Constitution. There is no statute in this state undertaking to fix the grounds for separate maintenance and support. This is left to the broad discretion of a court of equity.

We think under our decisions that the conduct of appellant was sufficient to justify respondent in leaving the home and that she is entitled to separate maintenance and support. *Levin v. Levin,* 68 S. C. 123, 46 S. E. 945; *State v. Bagwell, supra,* 125 S. C. 401, 118 S. E. 767; *State v. Barton,* 198 S. C. 256, 17 S. E. (2d) 561. He accused his wife of unchastity as soon as she became pregnant with the first child. Ordinarily it might be said that the act was condoned, but these charges were continuously repeated during the entire time that they cohabited together and as late as 1947. They were boldly reasserted when appellant brought this action. During the trial of the case, he persisted in offering evidence insinuating, but wholly insufficient to establish, a charge of adultery and seems to have done everything he could to smear his wife's character and reputation. To this cruelty is to be added the conduct of appellant in flaunting before his wife the love affair which he had with his secretary. This was a grave indignity. She was not called upon to endure the foregoing conduct.

Appellant contends that the claim for separate maintenance and support is barred by the separation agreement. It would seem that he himself repudiated this agreement when he instituted this suit for divorce and custody of the children. Moreover, the resumption of cohabitation after the execution of this agreement had the effect of rescinding it. *Ex parte* Tillman, 84 S. C. 552, 66 S. E. 1049, 26 L. R. A., N. S., 781; Annotation 40 A. L. R. 1227.

There was no error in allowing respondent separate maintenance and support. This was fixed by the Referee in the lump sum of $2,000.00 which was raised by the Circuit Judge to $2,400.00, although there was no exception by any of the parties to the amount fixed by the Referee. Under these circumstances, the Circuit Judge was without authority to disturb the Referee's finding. *Hendrix v. Holden,* 58 S. C. 495, 36 S. E. 1010.

Appellant contends that the sum of $1,500.00 fixed by the Referee and Circuit Judge as a fee for the attorneys for respondent is excessive. While a matter of this kind is largely addressed to the discretion of the Circuit Judge, we are convinced that under all the circumstances of this case, a review of which would unduly lengthen this opinion, the fee should not exceed $1,000.00. The fee fixed is accordingly reduced.

The remaining question is whether the Court erred in awarding the custody of the two boys to the mother. This matter has given us much concern. The Referee and Circuit Judge, who had an opportunity of observing the parties to this action, were in a much better position to determine this question than we are from the cold record. We do not feel justified in disturbing their conclusion that the custody of the children should be awarded to the mother. It should be added that the care and custody of a minor child is peculiarly within the jurisdiction of a court of equity and no decree thereabout is final. *Ex parte Jeter v. Jeter,* 193 S. C. 278, 8 S. E. (2d) 490; *Koon v. Koon.* 203 S. C. 556, 28 S. E. (2d) 89.

· In accordance with the foregoing conclusions, the lump sum alimony award to respondent is reduced to $2,000.00, the amount fixed by the Referee; the fee for the attorneys for respondent is reduced to $1,000.00; that portion of the decree granting to respondent a divorce a *vinculo matrimonii* is reversed; but in all other respects the decree appealed from is affirmed.

· FISHBURNE and STUKES, JJ., and E. H. HENDERSON, Acting Associate Justice, concur. '

TAYLOR, J., concurs in part and dissents in part.

.TAYLOR,. Justice (dissenting).

I am in agreement with the opinion, as prepared by Mr. Justice Oxner, except that portion which disposes of Question 5 disallowing $1,500.00 counsel fee for respondent's counsel. With this I do not agree. This litigation has been long and tedious, present counsel being the last of three to represent appellant. Numerous appearances were made, including one before a justice of this Court. Counsel has been forced to litigate constantly and aggressively, meanwhile suffering humiliation and abuse so vicious that the appellant was fined therefor as being in contempt of court. The learned Circuit Judge set the fee at $1,500.00. "The amount was within the judicial discretion of the court, and, in fixing that amount, the trial court could proceed upon its own knowledge of the value of the * * * services." *Ex parte* Robinson, 196 S. C. 186, 12 S. E. (2d) 701, 704.

This Court has long recognized that the Trial Judge is in a more advantageous position to pass upon the reasonableness of attorney's fees in matters litigated before him. In the instant case, respondent's counsel had, it has been said, the laboring oar in bringing this contested matter to a successful conclusion. This, as Mr. Justice Fishburne, in the case of *Hertzog v. Spartanburg Bonded Warehouses,* 184 S. C. 378, 192 S. E. 397, pointed out, is no small achievement, and while this Court will never stand for extortionate

or unreasonable fees, the payment of adequate and reasonable fees has always been upheld. See *Pelzer v. Ragsdale et al.,* 105 S. C. 201, 89 S. E. 705.

I am of the opinion therefore that this execption should be dismissed and the findings of the Circuit Judge as to the amount of the fee should be affirmed.

On Petitions for Rehearing.

PER CURIAM.

Both respondent and appellant have filed petitions for a rehearing. That of respondent is directed to the action of the Court in reducing the fee of her attorneys from $1,500.00 to $1,000.00. Appellant asserts in his petition that the Court erred (1) in awarding the custody of the minor children to respondent, and (2) in sustaining an allowance for separate maintenance and support notwithstanding the fact that a divorce was denied.

After careful consideration, both petitions are refused. We desire, however, to discuss briefly the contention of appellant that there was no basis for the allowance of any amount for separate maintenance and support after it was found that respondent was not entitled to a divorce. It is said that the complaint contained no independent cause of action for separate maintenance and support and any allowance therefor was beyond the scope of the pleadings.

In some jurisdictions it is held that alimony or separate maintenance can only be granted as an incident to divorce and that in the absence of statute, courts of equity are without jurisdiction to grant such relief. Annotation 141 A. L. R. 399; 27 Am. Jur., page 9. A number of states have enacted statutes empowering courts of equity in an independent action to award separate maintenance and support, but many of these permit such relief only for causes which would warrant a divorce. Accordingly, the statement is frequently found in some of the authorities that alimony cannot be allowed a wife when a divorce is denied. 27 C. J. S., Divorce, § 229

(3), page 943. To remedy this situation, some of the states have statutes which, in effect, provide that where the circumstances warrant it, a wife may be given permanent alimony even though she is refused a divorce.

The great weight of authority, however, is to the effect that a court of equity has inherent jurisdiction to entertain an independent suit for separate maintenance or alimony. It is so held in this state. See annotation 141 A. L. R. page 439. Most of the jurisdictions accepting this view hold that a wife may be allowed alimony where the facts warrant such relief, although a divorce is refused. In *Broad v. Broad,* 35 Cal App. 646, 170 P. 658, 659, the Court said: "Conditions may be such as not to entitle the wife to apply for a divorce, and yet the circumstances surrounding her marital life might be such as to render it obviously unjust to deny her all relief." In *Horton v. Horton,* 75 Ark. 22, 86 S. W. 824, it was held, quoting syllabus: "An independent action for alimony, irrespective of divorce proceedings, may be sustained, or alimony may be awarded in the divorce proceedings, notwithstanding the denial of the divorce."

The instant action was commenced by appellant. He sought a divorce and asked for custody of the children. Respondent denied the charges contained in the complaint and filed a counterclaim or cross-bill seeking a divorce from appellant, together with alimony and counsel fees, and also asked that she be awarded custody of the children. We concluded that neither party was entitled to a divorce, but that the wife was entitled to separate maintenance and support. No good reason appears why it should be necessary for respondent to institute an independent action to get that relief. The conduct of both parties has been investigated. They have submitted their respective contentions, presumably supported by all available evidence, to a court of equity—a court clothed with full power to settle the rights and equities of the parties. We think it is proper to

determine their rights on the facts presented and not force respondent to again litigate the same issue. The necessities of respondent and the children are immediate.

Our divorce statute, 46 St. at L. 216, permits the wife in every action for divorce, whether she be plaintiff or defendant, to ask for the allowance of alimony and suit money, and provides that in every judgment of divorce, "the court shall make such orders touching the maintenance, alimony and suit money of the wife, or any allowance to be made to her * * *, as from the circumstances of the parties and nature of the case may be fit, equitable, and just". But it is generally recognized that such a statute does not abrogate or impair the original inherent power of equity to grant alimony independent of a divorce. *Heflin v. Heflin,* 177 Va. 385, 14 S. E. (2d) 317, 141 A. L. R. 391.

But it is contended that the counterclaim did not allege a cause of action for support and separate maintenance and that the allowance of $2,000.00 for that purpose was beyond the scope of the pleadings. The counterclaim or cross-bill contains the usual allegations in an action of this kind. Among other facts, it was alleged that the appellant "is well able to and has sufficient means to provide for the support and maintenance of the defendant and for the support, maintenance and education of the infant children born of their marriage", and "that the defendant is without sufficient funds or property to wholly maintain the support of herself and the said infant childen, either permanantly or during the pendency of this action." We think the counterclaim includes appropriate allegations for separate maintenance and support. Substantially the same contention was made in *Cairnes v. Cairnes,* 211 Ala. 342, 100 So. 317, 318. In that case the wife filed a bill for a divorce from bed and board and asked for alimony and custody of the minor childen. The trial court denied the claim for divorce, the primary feature of the bill, but under

the general prayer awarded the wife support for herself and the children. The husband appealed. In sustaining the relief granted by the trial Judge, the Court said: "Counsel insist that, as the trial court declined the special and primary relief sought, it had no right, under the present pleadings, to award relief that was granted under the general prayer. While the relief granted was not what was specifically prayed for, it was consistent with the case made by the bill and proof, and could be awarded under the general prayer."

In *Murray v. Murray*, 238 Ala. 158, 189 So. 877, 878, the wife brought a suit for a divorce and alimony. The trial court granted both. On appeal it was held that the wife was not entitled to a divorce, but the award of alimony was affirmed. It was there stated:

"While we do not agree with that aspect of the decree which grants a divorce, it does not follow that the allowance of $30.00 per month should not be treated as an award independent of the divorce. In this jurisdiction a court of equity has original power to award alimony pending a separation under circumstances which do not justify a divorce, or when a divorce is not sought or awarded. While the conduct of appellant did not justify a divorce, it does justify, in our opinion, an allowance for separate maintenance on the theory that their separation was not voluntary abandonment by her of him. * * * An allowance for separate maintenance without divorce is in the sound discretion of the court exercising equity jurisdiction.

"We think that the ends of justice will be met if we here reverse the decree insofar as it grants a divorce, but affirm it insofar as it makes a monthly allowance of $30.00 a month to appellee, but modify that feature of it which makes the allowance permanent so that it will be subject to the further orders of the circuit court in its discretion from time to time "

In further support of the foregoing conclusion, see *Cray v. Cray*, 32 N. J. Eq. 25, and *Carboni v. Carboni*, 99 Mont. 279, 43 P. (2d) 634.

In concluding our discussion, it may not be amiss to call attention to the fact that on May 24, 1951, the following statute was enacted, Act No. 316 of the 1951 Acts of the General Assembly: "In all actions for divorce *a mensa et thoro*, allowance of alimony and suit money and allowance of alimony and suit money *pendente lite* shall be made according to the principles controlling such allowance in actions for divorce *a vinculo matrimonii*."

The foregoing statute was passed long after the trial of the instant case and several months after the appeal was heard in this court. Under these circumstances, it could not apply to this case and has not been considered. Nor do we intimate any opinion as to its purpose or effect.

Mr. Justice Taylor desires to say that he is in full accord with the view that appellant's petition should be denied but for the reasons set forth in his dissenting opinion, thinks respondent's petition should be granted.