## 16828
### MINCEY v. MINCEY
(80 S. E. (2d) 123)

*Messrs. William L. Cain, Frank L. Taylor,* and *Eugene F. Rogers,* of Columbia, *for Appellant,*

*Messrs. Thomas H. Pope,* of Newberry, and *John Gregg McMaster,* of Columbia, *for Respondent,* 

February 1, 1954.

G. BADGER BAKER, Acting Associate Justice.

This appeal is by the husband from a decree granting his wife a divorce on the ground of constructive desertion together with alimony, counsel fees, and awarding the wife the custody of their two minor children.

In June of 1950 the respondent commenced an action for divorce upon the statutory ground of physical cruelty. Shortly thereafter, the Honorable John T. Sloan, now deceased, Judge of the Juvenile-Domestic Relations Court of Richland County, issued his order directing appellant to pay respondent the sum of $175.00 per month for temporary maintenance and support for herself and children. An order of reference was issued, following which Honorable Harry M. Lightsey, Master for Richland County, conducted the necessary reference and filed his Report on November 27, 1950, wherein he found and recommended that respondent was not entitled to a divorce upon the ground of physical cruelty. In this Report the Master did not make any finding as to the custody of children or as to maintenance and sup-

port, specifically stating that his recommendations were only on the ground of physical cruelty and not to any other cause of action for divorce which respondent might have against appellant. No further action was taken in this matter, nor was any order passed by Judge Sloan affirming the Master's Report.

Thereafter, on June 11, 1951, respondent commenced her action for divorce upon the ground of desertion. The complaint alleged respondent and appellant were married April 3, 1937, and lived together as man and wife in Richland County from June, 1945, until June, 1950, when appellant abandoned and deserted respondent and his children. It is further alleged the desertion was brought about by the appellant's excessive drinking, cruel and degrading and unjust treatment of respondent and their children, his use of profane and obscene language, and appellant's engagement in an affair with another woman, all of which was so humiliating and degrading to respondent that she and the children were forced to leave the residence of appellant in Columbia and live with respondent's parents in Winnsboro. The complaint further alleges that under these facts and circumstances "the defendant has deserted the plaintiff, such desertion extending over a period of more than one year prior to the institution of this action, and on this ground plaintiff is entitled to a complete and final divorce." There are appropriate allegations in the complaint requesting custody of the children, maintenance and support, and counsel fees.

In due course of time appellant answered the complaint, denying the conduct charged against him and alleging that respondent abandoned the home voluntarily, taking their children with her, against his desires and wishes. He further says that it would be to the best interest of the children to have the care, custody and control awarded to him, and asks for dismissal of the complaint and complete custody, care and control of the minor children.

There was an interchange of notices of motions between counsel for respondent and appellant, which motions were heard by Judge Sloan in July of 1951, and he issued a consent order consolidating the two divorce actions of June 1950 and June 1951 and referred the consolidated actions to the Master for Richland County to take the testimony concerning the cause of action for divorce as alleged in the complaint of June 11, 1951, as well as to determine the question for care, custody and control of the children, maintenance and support and counsel fees, if any. The order theretofore issued awarding respondent temporary maintenance and support in the sum of $175.00 per month was continued in force and effect during the pendency of the action.

Thereafter, the Master held numerous hearings, and on July 30, 1952, rendered his Report to the Juvenile-Domestic Relations Court wherein he concluded and recommended from the evidence, (1) that respondent was entitled to divorce from appellant upon the ground of constructive desertion; (2) that the custody of the two minor children be awarded to respondent except the months of June, July and August, wherein custody is transferred to appellant, with the right of either to visit the children when the other has custody, with an interchange of custody during Christmas holidays; (3) that respondent should be required to pay the sum of $150.00 per month for the support of the two children, and $25.00 per month as alimony to respondent as long as she remains single; and (4) a reasonable fee for respondent's counsel in the sum of $350.00.

Exceptions were taken to the Master's Report and argued before Judge Sloan, and on December 8, 1952, he filed his order overruling all of the appellant's exceptions, confirming the Master's Report and awarding respondent's counsel an additional fee of $200.00 for services rendered respondent in enforcing compliance of the order heretofore issued in contempt proceedings instituted against appellant. Exceptions were taken from the order of Judge Sloan to the Court of Common Pleas, and thereafter, on April 11,

1953, Honorable J. Frank Eatmon, then presiding Judge of the Fifth Judicial Circuit, issued and filed his order overruling all exceptions and confirming in all respects the order and judgment of the Juvenile-Domestic Relations Court.

The Master, in his Report, refers to the original action of June 22, 1950, for divorce on the ground of physical cruelty, stating the respondent failed to prove the allegations of physical cruelty. His factual findings, upon the question of divorce, is contained in one paragraph, to wit, "It appears from the evidence that it is necessary for the defendant to be away from home considerable portions of the time and until late hours at night; that the defendant drinks from time to time; and that he does have close and unusual association with one of his female employees, to the extent of having in his possession a picture of said employee (a part of evidence herein). In addition, the plaintiff complains of having been slapped, and of an injury to the leg of one of the minor children caused by a cigarette thrown at her by the defendant."

He then concludes from the evidence, "taking into consideration the highly nervous temperament of the plaintiff, that the plaintiff is entitled to a divorce *a vinculo matrimonii* from the defendant upon the ground of constructive desertion for a period of one year."

The affirming order and decree of the Juvenile-Domestic Relations Court does not contain any additional comment upon the evidence. The order and decree of the Court of Common Pleas cites and discusses, at length, the case of *Machado v. Machado,* 220 S. C. 90, 66 S. E. (2d) 629, wherein this Court, opinion by Justice Oxner, considered the question of constructive desertion. Judge Eatmon, referring to the evidence, says:

"* * * In the instant case the evidence clearly shows that the parties separated because of the husband's close and unusual relationship with his female employee, Mrs. Ligon, and because of the husband's excessive drinking, excessive use of

profanity, abuse of his wife and son and his threats against his wife. As the plaintiff testified, life to her became unbearable because of her husband's misconduct and although she remonstrated with him about Mrs. Ligon, he not only refused to terminate his relationship with her but flaunted it in his wife's face and dared her to do anything about it.

"Any reasonable man must have known that the natural consequence of defendant's misconduct would be his wife's leaving home and refusing to continue longer the marital relation. * * *."

We have quoted from the Master's Report and the final order for two reasons, (1) to avoid a detailed review of the voluminous testimony in the record before us, which could not serve any useful purpose, and (2) the misconduct that must be shown to justify a divorce on the ground of constructive desertion.

An action for divorce is within the equity jurisdiction of the Court. Accordingly the evidence must be considered in the light of the well-settled rule that in an equity case findings of fact by a Master or Referee, concurred in by a Circuit Judge, will not be disturbed by this Court unless it appears that such findings are without evidentiary support or are against the clear preponderance of the evidence.

Succinctly stated, the evidence, and its inferences, establishes reprehensible misconduct on the part of appellant, but without specific or sufficient proof of adultery, physical cruelty or habitual drunkenness. Nor is there any claim that appellant physically abandoned respondent. It is apparently conceded by respondent that the evidence is insufficient to justify a divorce on any other ground than "constructive desertion."

In *Machado v. Machado, supra* [220 S. C. 90, 66 S. E. (2d) 633], this Court held that the constitutional amendment of 1949, authorizing divorces, is to be construed to

retirement is a distinct loss to this Court, the Judiciary, and the State of South Carolina. Cited and quoted in this opinion is the old case of *Mattison v. Mattison,* 1 Strob. Eq. 387, 47 Am. Dec. 541, which contains the expression, "This new and perilous power", so descriptive of the authority now vested in the courts to grant divorces. Perilous it is, and should be exercised in strict compliance with the 1949 amendment to Art. XVII, § 3 of the Constitution of 1895, and the enactment of the General Assembly providing for and regulating the severance of the bonds of matrimony, Sections 20-101 to 20-148, 1952 Code of Laws.

The amended Section 3 of the Constitution now reads as follows: "Divorces from the bonds of matrimony shall be allowed on grounds of adultery, desertion, physical cruelty, or habitual drunkenness." The granting of the power to allow divorces carries with the grant the limitation that its exercise will be confined to the specific grounds. Should we enlarge upon the strict intendment of the amendment it would be an entry into the field of legislation and do violence to the public policy relating to marriage. Our policy is well expressed in *Brown v. Brown, supra:*

"It is generally recognized that the public policy relating to marriage is to foster and protect it, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation. This policy finds expression in probably every state in this country in legislative enactments designed to prevent the sundering of the marriage ties for slight and trivial causes, or in any case except on a full and satisfactory proof of such facts as the legislature has declared to be cause for divorce. Such provisions find their justification only in this well-recognized interest of the state in the permanency of the marriage relation. 17 Am. Jur., Sec. 12, page 154. As said in *Maynard v. Hill,* 125 U. S. 190, 8 S. Ct. 723, 729, 31 L. Ed. 654: 'Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in

and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress.' "

There has been a shift in the public policy of this state relating to matrimony, which change is reflected in the constitutional amendment. Nevertheless, marriage still remains an institution in the maintenance of which in its purity the public is deeply interested, and adoption of the liberal view of constructive desertion would not be designed to prevent the sundering of the marriage ties but would be an enlargement of the grounds for the allowance of divorce. While divorce does erase the legal obligations arising from the marriage relationship, nevertheless a recognition of the liberal view would be directly against the interest of society, the obligations of the conjugal relation, and the welfare of families. A fifth ground would be added wherein parties to a marriage contract could renounce the ties of wedlock and abandon its duties and obligations for any cause that might seem reasonable and just to them, or for any other cause other than the legal causes for divorce.

As stated in the *Machado case supra,* "Constructive desertion should never be permitted to be used as a subterfuge for obtaining a divorce on a ground not permitted by the Constitution", and "If our courts intend (as they have often declared) to continue to resist the pressure of modern society for an easy escape from the bonds of matrimony, a more conscious effort must be made to keep the fiction of constructive desertion within the legitimate boundaries of its application."

We are in sympathy with respondent in the plight in which she finds herself, but our sympathy can have no weight in what we consider the law and what was intended by the adoption of the constitutional amendment. The interest of society, the welfare of families, and the preservation of the marriage institution is the paramount consid-

eration even though there may be, or will be a few who may suffer by a declaration of and adherence to this policy.

In order to constitute constructive desertion, the abandoning party seeking to make a technical deserter out of the one abandoned, must establish misconduct on the part of the other in itself, and independently, amounting to one or more of the recognized permitted grounds for divorce. The conduct complained of must in itself be a sufficient cause for divorce, one or more of the four grounds permitted by the constitutional amendment.

For the reasons stated, the right of respondent to a divorce is denied.

We now consider whether respondent is entitled to separate maintenance and support, and the custody, control and supervision of the children for the major portion of the year.

The causes for which separate maintenance and support may be granted are not confined to those which constitute grounds for divorce. *Machado v. Machado, supra,* goes thoroughly into this subject, and further recitation of the law thereon is needless. We think under our decisions, many of which are contained in the *Machado case, supra,* the conduct of appellant was sufficient to justify respondent in leaving the home, and that she is entitled to separate maintenance and support. This has been fixed at the sum of $175.00 per month, which is justified by the record. In addition thereto, appellant has been required to pay attorney's fees to counsel for respondent, and the exceptions thereto are without merit. The Juvenile-Domestic Relations Court granted a larger fee than recommended by the Master, and this greater fee has also been allowed by the order of the Court of Common Pleas. There is no exception to the increase in fee, and this is only mentioned by way of explanation.

The remaining question is whether the Court erred in awarding to respondent the custody of the two boys during the major portion of the year, with right of visitation by

appellant when respondent has the children, and right of visitation by respondent when appellant has the children. Respondent has not appealed from this divided custody, but appellant has excepted to that portion of the decree giving respondent the custody of the children during the school months.

The Judge of the Juvenile-Domestic Relations Court and the Circuit Judge have concurred in the recommendation of the Master, who had an opportunity of observing the parties to the action and therefore in much better position to determine this question than we are from the cold record. While divided custody is a matter of concern, we do not feel justified in disturbing their conclusion that the custody and control of the children should be awarded to the mother for the major duration of the year, and we certainly could not conclude with appellant that it would be to the best interest of the children for appellant to have their control, custody and supervision throughout the whole of the year. If the procedure now approved should be inimical to their interest, application may be made to the Court for any necessary change.

During the course of the hearing, appellant moved to amend his pleadings to ask for a divorce from respondent on the ground she had deserted him without just cause, and further, even if she had cause, her refusal to return after a bona fide offer to have her return entitled him to a divorce.

From what has been said heretofore about the misconduct of appellant, it is readily apparent that respondent had just cause to leave her husband. He, being solely responsible for the marital discord and ultimate separation, cannot successfully charge his wife with abandonment and desertion. His contention that her refusal to return after a bona fide offer of reconciliation proves an intent on her part to desert and abandon appellant is without merit. Whether such offer was bona fide is questionable in view of appellant's past marital record, and respondent was

and is not **required to blindly** accept the same, but may judge the **offer by its background.**

All of appellant's exceptions have been considered and **the voluminous** record studied with care. Certain of the exceptions have been sustained, that is, those relating to the ground of a divorce on constructive desertion. Nevertheless, we feel this being an action in equity, and appellant being the sole cause of its institution, he should also be **charged with** and required to pay all legal costs incurred, **which includes** cost of printing necessary for presentation in this Court, as well as other costs allowed by law.

The portion of the decree granting to respondent a divorce *a vinculo matrimonii* is reversed, but in all other respects the decree appealed from is affirmed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.