17617

Wesley N. INABINET, Appellant, v. Rosezenna Walker INABINET, Respondent

(113 S. E. (2d) 66)

D. *Marchant Culler, Esq.,* of Orangeburg, *for Appellant,*

*Marshall B. Williams, Esq.,* of Orangeburg, *for Respondent,*

February 24, 1960.

LEGGE, Justice.

Wesley N. Inabinet brought this action in the Orangeburg County Court for divorce from his wife, Rosezenna, upon the ground of desertion. Answering his complaint, she denied that she had deserted him and, by way of counterclaim, sought a decree for separate maintenance of herself and their minor child upon the ground, among others, that he had failed and refused to provide a

home for them. He appeals from a decree dismissing the complaint and ordering him to pay to her a certain sum each month. His exceptions charge that the trial court's conclusions were contrary to the weight of the evidence.

Both parties are schoolteachers. At the time of their marriage in December, 1947, Wesley was teaching in Berkeley County, where he has continued to teach ever since; Rosezenna was teaching in Hampton County, and she continued to teach there for about two years. On week-ends and in summer vacation during that period they lived in the home of his parents in Orangeburg County. During part or all of the school session of 1950-1951 she taught in Berkeley County and they lived together in a boardinghouse. When the session ended in June, 1951, they returned to his parents' home; and there they remained until September of that year, when she went, just before her baby was born, to her mother's home, also in Orangeburg County. It appears from her testimony that her life in the home of his parents was unhappy, primarily because of his mother's evident dislike for her, and also because his father would sometimes get violently drunk; and that she had tried, without success, to get him to establish a home of their own. It appears also that she did not look with favor upon his interest in and association with another woman, who also taught in the Berkeley County school, and who, although having a home in Rock Hill, rented a small house in Orangeburg, where he frequently visited her.

This unhappy situation appears to have reached a climax in the latter part of December, 1951, when Rosezenna went to see Wesley in Moncks Corner and to insist that he provide quarters there after the Christmas holidays so that she and the baby could come and live with him. She testified that this request evoked no response, and that when he returned at the end of that week to his parents' home his mother upbraided her in his presence for having gone to see him in Moncks Corner, saying that he had no need of a wife, and that he had to have another woman in his life,—to which

statement he interposed no objection. Shortly thereafter, Rosezenna left with her baby and went to Stamford, Connecticut, where she had relatives. As to the circumstances of her going, the evidence is conflicting. It is not disputed that about January 1, 1952, Wesley and his father took her and the baby by automobile to her sister's home in Orangeburg, and left them there. Wesley and his father testified that they understood that she was to visit her sister for a week or so; she testified that she had refused to live any longer in his parents' home, and that they knew that she was leaving that abode permanently. At all events, after staying with her sister for a few days, she went to Connecticut, found employment, and remained there for two years, when she returned to Orangeburg and taught for a year in the public school at Pineville. At the end of that year the Pineville school was closed as the result of consolidation of school districts; and it appears that she has been unemployed ever since, despite her efforts to find work as a schoolteacher. According to her testimony, she came back to Orangeburg in the summer of 1953 and proposed to Wesley that they rent an apartment, which he refused to do.

Appellant concedes that, except for a room in his parents' home and access to the rest of that house, he has never provided a home for his wife and child. According to his testimony and that of his parents and his aunt, peace and contentment reigned in that house. He insists that, although his wife complained of it, there was nothing improper in his association with another woman. He does not suggest that his means were insufficient to provide for his family a home of their own.

Further discussion of the evidence is unnecessary. We have carefully considered all of it and are of the opinion that it adequately supported the findings and conclusions of the lower court. Our duty in equity cases to review challenged findings of fact as well as matters of law does not require that we disregard the findings below or that we ignore the fact that the trial judge, who saw and heard

the witnesses, was in better position than we are to evaluate their credibility; nor does it relieve appellant of the burden of convincing this court that the trial judge erred in his findings of fact. *Twitty v. Harrison,* 230 S. C. 174, 94 S. E. (2d) 879.

Appellant, arguing against the trial judge's finding "that plaintiff by his conduct or his acts deserted the defendant", urges that under the rule stated in *Mincey v. Mincey,* 224 S. C. 520, 80 S. E. (2d) 123, a finding of constructive desertion must be based upon conduct that is in itself a sufficient cause for divorce, *i. e.,* one or more of the four grounds permitted by the Constitution. But this argument loses sight of the fact that respondent's claim here is for separate maintenance, not divorce. In characterizing appellant's conduct as amounting to desertion of the respondent, the trial judge was obviously referring to it as justifying her in leaving the matrimonial abode and seeking separate maintenance. "In actions for divorce, we are limited by the terms of the Constitution. There is no statute in this state undertaking to fix the grounds for separate maintenance and support. This is left to the broad discretion of a court of equity." *Machado v. Machado,* 220 S. C. 90, 66 S. E. (2d) 629, 635.

It is the duty of a husband to provide for his wife, in accordance with his means, a home wherein she may live as the object of his care and affection without interference from members of the household; and if he fails or refuses to provide such a home she will be justified in leaving and will not be guilty of desertion if she does so. She marries him, not his family. *State v. Bagwell,* 125 S. C. 401, 118 S. E. 767; *State v. Free,* 158 S. C. 515, 155 S. E. 838; *Holloway v. Holloway,* 203 S. C. 339, 27 S. E. (2d) 457. Her obligation to be tolerant, within reason, of his shortcomings, *cf. Forester v. Forester,* 226 S. C. 311, 85 S. E. (2d) 187, is one thing; her right to freedom from ill-treatment, nagging, and unwarranted interference on the part of his parents, is another.

"As to what conduct of a husband's relatives will justify a wife in leaving the marital abode, it cannot be said that the courts have formulated a rule of general application." *State v. Bagwell, supra* [125 S. C. 401, 118 S. E. 768]. Each case of this kind must be decided on its own circumstances, which should be considered as a whole. *Holloway v. Holloway, supra.* We think that the circumstances of this case warranted the holding of the trial judge that the acts and words of respondent's parents-in-law were such as to make her life in their home intolerable and to justify her in leaving that abode.

The order of the lower court directs that appellant pay to respondent fifteen dollars each month until she "gets a job", and to her attorney one hundred dollars as a fee for his services. Appellant does not suggest that either the amount allowed as attorney's fee or the amount or duration of the monthly payments ordered to be made to respondent is unreasonable. No issue is here involved concerning the custody and support of the minor child, that matter having been adjudicated by the Domestic Relations Court of Orangeburg County.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.