18059

Simon W. BOOZER, Respondent, v. Frances H. BOOZER, Appellant
(130 S. E. (2d) 903)

*Messrs. John D. Long* and *Long & Long,* of Union, *for Appellant,*

*Henery Busbee, Esq.,* of Aiken, *for Respondent,*

April 24, 1963.

BUSSEY, Justice.

This action was instituted on January 26, 1962 by the respondent husband for a divorce on the ground of desertion for a period of one year. Section 20-101 (2), 1962 Code of Laws of South Carolina. The appellant wife denied that she was guilty of desertion. The Master of Aiken County, to whom the cause was referred, filed his report in which he found that the wife deserted the husband on January 13, 1961, and recommended the granting of a divorce to the respondent. Upon exceptions to the findings of fact and legal conclusions contained in the Master's report, the circuit court rendered a decree affirming the Master's findings of fact as to desertion and granting a decree of divorce to the husband on that ground.

The case comes to this court upon a number of exceptions In our view of the record, however, it is only necessary to pass upon whether or not there was sufficient evidence to support the findings of fact that the wife had deserted the husband for the requisite statutory period of time.

On this question we are bound by the rule that in an equity case where the findings of fact by a master are concurred in by the circuit judge, such are conclusive upon this court and will not be disturbed unless it is shown that such findings are without any evidence to support them, or are against the clear preponderance of the evidence. *Oswald v. Oswald,* 230 S. C. 299, 95 S. E. (2d) 493.

The essential elements of desertion, to warrant a divorce on that ground under the law of this state, are (1) cessation from cohabitation for the statutory period of one year; (2) intent on the part of the absenting party not to resume it; (3) absence of the opposite party's consent; and (4) absence of justification. *Frazier v. Frazier* 228 S. C. 149, 89 S. E. (2d) 255; *Machado v. Machado,* 220 S. C. 90, 66 S. E. (2d) 629.

In this appeal we only need to consider whether there was any competent evidence to support the first essential element above mentioned. We conclude from a review of the record that there was not.

The parties with their two children were, for some time prior to January 13, 1962, living together in Aiken. On that date, the wife took the two children and a substantial portion of the furniture and departed for Union, her former home, where she secured living quarters for herself and the children, and thereafter maintained at one place or another in Union living quarters for herself and children until after the commencement of this action. The husband continued throughout the same period to maintain the same place of abode in Aiken.

The circumstances giving rise to the departure of the wife and children are in dispute. Facts not in dispute, however,

are as follows. Due to differences which arose prior to January 13th, the husband was willing for the wife to remain in the home in Aiken only on conditions, one of which was that the parties would reside there as husband and wife, in name only, for the sake of the children. The husband sought to obtain the return of his wife to Aiken, but under the foregoing conditions, and she declined to return under those conditions.

The husband has several occupations, his principal one being an employee at the Atomic Energy Plant in Aiken County, where he is engaged in shift work. The wife is a trained nurse by profession and was employed in her profession in Union where during most, if not all, of the period of the time involved here she worked at night. As a result of the husband's shift work, he had alternately long weekends and on these long weekends he regularly visited the family in Union, staying three or four nights at a time in the living quarters occupied by his wife and children. The wife, in turn, with considerable frequency, took the children back to Aiken where they occupied the same abode as the husband. During the period of time the parties went on two vacation trips with the children.

The husband testified that on his regular visits to Union, the vacation trips and the wife's visits to Aiken, he did not at any time have marital relations with his wife. He insists that on his regular visits to Union, with his wife working at night, he never occupied the bed in which she slept, with or without her, but that he slept on the couch in the living room. With respect to the wife's trips to Aiken, he insists that between shift work and otherwise, he avoided sleeping with his wife, and that on the vacation trips he and his wife occupied separate rooms. The wife's testimony on this point is to the contrary, she maintaining that normal marital relations were maintained throughout the period of time of alleged desertion. It is undisputed that the husband was actually present in the living quarters in Union, South Carolina, when process in this cause was served. There is testi-

mony from a neighbor in Aiken to the effect that upon the visits of the wife and children to Aiken there was no outward indication that the parties were estranged.

Although it is clear in this case that friction between the parties caused the establishment and occupation of two domiciles during the period of time involved, there is nothing unusual under present day conditions about more than one domicile being maintained by husband and /or wife. Such is frequently the result of the occupational or economic status of the parties, even when husband and wife are living in perfect harmony. In the final analysis, the husband's contention that cessation of cohabitation for a period of one year has been established can only rest on his testimony that he refrained from marital relations with his wife throughout the period. When a husband and wife occupy the same living quarters, the law presumes that they engage in marital relations. See *Phinizy v. Phinizy,* 154 Ga. 199, 114 S. E. 185, and numerous authorities cited therein. Apropos of the question here under discussion, we think is the following language from the North Carolina case of *Dudley v. Dudley,* 225 N. C. 83, 33 S. E. (2d) 489:

"There is no evidence on this record showing a cessation of cohabitation between the plaintiff and defendant in the usually accepted sense, except as to their sexual relations. As stated in *Parker v. Parker,* 210 N. C. 264, 186 S. E. 346, 347: 'The word "separation", as applied to the legal status of a husband and wife, * * * means "A cessation of cohabitation of husband and wife." Cohabit, according to Winston's Dictionary, Encyclopedia Edition (1943), means: 'To live together as man and wife; usually, though not necessarily, implying sexual intercourse.' Black's Law Dictionary, Third Edition, defines the meaning of cohabitation, as: 'Living together, living together as man and wife; sexual intercourse.' Cohabitation includes other marital duties besides marital intercourse.

"The overwhelming weight of authority as to what is meant by living 'separate and apart', is in accord with the

view expressed in 17 Am. Jur., Sec. 162, p. 232, as follows: 'The discontinuance of sexual relations is not in itself a living "separate and apart" within the meaning of some statutes, and a divorce will be denied where it appears that during the period relied upon the parties had lived in the same house. It has been said that what the law makes a ground for divorce is the living separately and apart of the husband and wife continuously for a certain number of years. This separation implies something more than a discontinuance of sexual relations, whether the discontinuance is occasioned by the living apart for such period in such a manner that those in refusal of the wife to continue them or not. It implies the the neighborhood may see that the husband and wife are not living together.' " [Citing many authorities].

"Marriage is not a private affair, involving the contracting parties alone. Society has an interest in the marital status of its members, and when a husband and wife live in the same house and hold themselves out to the world as man and wife, a divorce will not be granted on the ground of separation, when the only evidence of such separation must, in the language of the Supreme Court of Louisiana (in the case of *Hava v. Chavigny,* 147 La. 331, 84 So. 892), 'be sought for behind the closed doors of the matrimonial domicile.' "

We are not unmindful that there is authority for the proposition that individual or isolated acts or cohabitation will not operate to break the continuity of a statutory period of desertion. 17 Am. Jur., Divorce and Separation, Section 240, Annotation 155 A. L. R. 132. Here, however, we are concerned not with any isolated act or acts, but rather with a course of conduct by the parties throughout most of the statutory period.

We think that this course of conduct definitely served to break the continuity of the statutory period and that a finding that a cessation of cohabitation had existed for the statutory period was unwarranted. To hold that a husband was entitled

to a divorce on the ground of desertion, under the facts of this case, could well prove to be an invitation to fraud upon the courts.

Reversed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.