716 S.E.2d 271

**Eileen Frances Theresa Busto THEISEN, Appellant,**

v.

**Clifford Richard THEISEN, Respondent.**

**No. 27041.**

Supreme Court of South Carolina.

Heard April 5, 2011.

Decided Sept. 19, 2011.

Robert M. Rosenfeld, of Porter & Rosenfeld, of Greenville, for appellant.

Joseph M. Ramseur, Jr., of Greenville, and Steven E. Buckingham, of Gallivan, White & Boyd, of Greenville, for respondent.

Justice HEARN.

This case presents the novel issue of whether an action for separate maintenance and support can be pursued when the parties are still living together. We hold that it cannot and affirm the family court's decision to dismiss this action. Due to our conclusion that this action fails a matter of law, we further hold that the family court did not err in cancelling the *lis pendens* and request for attorney's fees filed in conjunction with this suit.

## FACTUAL/PROCEDURAL BACKGROUND

Eileen (Wife) and Clifford (Husband) Theisen were married in 1980. Aside from various forms of seasonal employment, Wife was a homemaker for the vast majority of the marriage. Husband currently receives dividend payments from his interest in his family's business as well as some compensation for serving as a director of the business, but the current economic crisis placed a strain on the parties' other financial resources. At the time of this action, the parties owned three properties: the marital home, which is in Wife's name, and two rental properties, both of which are in Husband's name.

Husband readily acknowledges that he and Wife have had their fair share of difficulties during the course of their thirty-year marriage. In fact, Wife has filed for divorce[1] on two

---

1. Wife stated these proceedings were actions for divorce. Husband contends that they were for separate maintenance, not divorce. The record before us does not contain any copies of these filings, and Wife's

previous occasions, at least one of which was premised on the fault ground of physical cruelty. Husband and Wife reconciled following the first petition, and the second was dismissed because the proceedings were not concluded within one year from the date of filing. In Husband's view, these actions were "nothing more than efforts to get [his] attention. . . . [They] stay living together, she calms down and life goes back to normal."

Wife subsequently filed this action for separate maintenance alleging Husband "has engaged and continues to engage in a course of conduct making it unreasonable and unfair to require [Wife] to continue to live with him." In particular, Wife complained of Husband's unilateral control and disposal of marital assets, creation and non-payment of debts in Wife's name, and present emotional and verbal abuse. In her complaint, Wife asked the family court to award the following: (1) separate maintenance and support; (2) custody of the minor children;[2] (3) child support; (4) spousal support; (5) sole and exclusive use and possession of the marital home; (6) sole and exclusive use and possession of one of the parties' vehicles; (7) equitable division of marital assets and debts; and (8) attorney's fees. She also moved for temporary relief and filed a *lis pendens* on each of the rental properties in Husband's name. Despite alleging that Husband's conduct was so unreasonable and unfair that Wife should not have to live with him, Husband and Wife continued to live in the same house before and after she filed the instant action, albeit sleeping in different rooms.[3]

Husband counterclaimed for equitable distribution of the marital assets and debts as well as attorney's fees. He contended that the parties' difficulties were the result of their recent financial situation, not a course of conduct designed to denigrate Wife. Husband further made motions to dismiss Wife's complaint under Rule 12, SCRCP, for lack of subject

---

attorney simply denominated these prior filings "actions" with no further indication of whether a divorce was sought.

2. All of their children have now attained the age of majority.

3. The night before the hearing in the family court, Husband, Wife, and their children "all celebrated a very nice Easter dinner as a family at [their] home."

matter jurisdiction and failure to state a claim upon which relief can be granted. Both motions were premised on the fact that Husband and Wife were not living separate and apart. He also moved to cancel the *lis pendens* placed on his rental properties.

The family court held a combined hearing on Wife's motion for temporary relief and Husband's motions to dismiss and cancel the *lis pendens*. The court found it "has the jurisdiction to order separate support and maintenance, [but it] does not have the authority to do so when the parties are living together." Accordingly, the court concluded "Wife has failed to state facts sufficient to constitute a cause of action" and dismissed her complaint. Based on that finding, the court cancelled each *lis pendens*, denied Wife temporary relief, and denied each party attorney's fees. This appeal followed.

## ISSUES PRESENTED

Wife raises four issues on appeal:

I. Does the family court have subject matter jurisdiction to hear a claim for separate maintenance when the parties are still living together?

II. Did the family court err in dismissing Wife's complaint because it failed to allege the parties are no longer living together?

III. Did the family court err in cancelling Wife's *lis pendens* on Husband's rental properties?

IV. Did the family court err in not awarding Wife attorney's fees?

## LAW/ANALYSIS

### I. SUBJECT MATTER JURISDICTION

Wife first argues the family court erred in not exercising jurisdiction over this matter. However, Wife's argument misconstrues the court's finding that it lacks "authority" to hear the claim as a finding that it lacks subject matter jurisdiction.

"Subject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong.'" *Dove v. Gold Kist, Inc.*, 314 S.C.

235, 237–38, 442 S.E.2d 598, 600 (1994) (quoting *Bank of Babylon v. Quirk*, 192 Conn. 447, 472 A.2d 21, 22 (1984)). Because the family court is a creature of statute, it is a court of limited jurisdiction. *State v. Graham*, 340 S.C. 352, 355, 532 S.E.2d 262, 263 (2000). Accordingly, "[i]ts jurisdiction is limited to that expressly or by necessary implication conferred by statute." *Id.* Section 63–3–530(A)(2) of the South Carolina Code (2010) provides that "[t]he family court has exclusive jurisdiction ... to hear and determine actions for divorce *a vinculo matrimonii*, separate support and maintenance, legal separation, and in other marital litigation between the parties."

■ Section 63–3–530(A)(2) therefore expressly confers upon the family court the power to hear all actions for separate maintenance. Indeed, the family court expressly found it had jurisdiction over this matter. Wife, however, interprets the word "authority" as meaning the court found its jurisdiction to be limited, and she accordingly engages in a discussion of the differences between "jurisdiction," "exercise of jurisdiction," and "authority." This argument misapprehends the nature of the family court's ruling, and it confuses and conflates the concepts of subject matter jurisdiction and the statutory elements to receive the relief sought. The court's order merely found that it lacked authority to award separate maintenance because Wife failed to plead its essential elements, not because the court lacked subject matter jurisdiction. Therefore, her arguments are more properly directed towards the court's dismissal of her claim under Rule 12(b)(6), SCRCP.

## II. FAILURE TO STATE A CLAIM

■ Wife next argues the family court erred in dismissing her complaint because she failed to allege she was living separate and apart from Husband. We disagree.

Section 20–3–130(B)(5) of the South Carolina Code (Supp. 2010) contains the following provisions regarding separate maintenance:

Alimony and separate maintenance and support awards may be granted *pendente lite* and permanently in such amounts

and for periods of time subject to conditions as the court considers just including, but not limited to:

 . . . .

(5) Separate maintenance and support to be paid periodically, but terminating upon the continued cohabitation of the supported spouse, upon divorce of the parties, or upon the death of either spouse . . . and terminable and modifiable based upon changed circumstances in the future. The purpose of this form of support may include, but is not limited to, circumstances where a divorce is not sought, but it is necessary to provide for support of the supported spouse by way of separate maintenance and support when the parties are living separate and apart.

■■ Initially, we note that section 20–3–130(B)(5) does not specifically state whether the parties must live separate and apart prior to petitioning the court for separate maintenance. However, the very name *separate* maintenance and support connotes separation between the parties. "Separate" means "to set or keep apart" or "become divided or detached." Merriam–Webster Dictionary, http://www.merriam-webster.com/dictionary/separate. Thus, the purpose of separate maintenance is to provide support for a spouse when he or she is living apart from the other spouse. The statute also specifically states that it applies when the parties are living separate and apart but a divorce is not sought. The fact that separate maintenance terminates upon the continuous cohabitation of the supported spouse with another is more evidence of the same; the supported spouse cannot cohabitate with another unless he has already separated from the payor spouse. Furthermore, Wife's emphasis that she sleeps in a different room than Husband appears to be a tacit recognition on her part that at least some degree of separation is required.

■ We implicitly have recognized for years that living separate and apart is a requirement for separate maintenance. Under South Carolina law, a spouse does not need grounds that would merit a divorce in order to receive separate maintenance. *Machado v. Machado*, 220 S.C. 90, 103, 66 S.E.2d 629, 635 (1951). We have thus refused to define any specific grounds and instead have left this decision to the discretion of

the family court.[4] *Id.* However, we have often searched for whether there was justification—whatever that justification may be—for the supported spouse to *leave* the marital home. *See, e.g., Welch v. Welch,* 250 S.C. 264, 268, 157 S.E.2d 249, 251 (1967) (holding a wife was entitled to separate maintenance and support where "[s]o far as man may judge, the alienation of the parties is complete, and a resumption of cohabitation would be intolerable"); *Inabinet v. Inabinet,* 236 S.C. 52, 56, 113 S.E.2d 66, 68 (1960) (stating in the context of separate maintenance that "[i]t is the duty of a husband to provide for his wife, in accordance with his means, a home wherein she may live as the object of his care and affection without interference from members of the household; and if he fails or refuses to provide such a home she will be justified in leaving and will not be guilty of desertion if she does so"); *Owens v. Owens,* 221 S.C. 84, 89, 69 S.E.2d 74, 76 (1952) (discussing question specifically raised on appeal regarding an award of separate maintenance of whether facts showed wife was justified in leaving the home); *Machado,* 220 S.C. at 103, 66 S.E.2d at 635 ("We think under our decisions that the conduct of appellant was sufficient to justify the respondent in leaving the home and that she is entitled to separate maintenance and support.").

■ While we have never specifically addressed the precise question presented here, we have addressed whether a spouse must leave the marital home when seeking a divorce, despite no statutory language directly on point. If the parties are seeking a no-fault divorce based on one year's continuous separation, they must live in separate domiciles during that

4. The dissent extrapolates from *Machado* and the eighteenth century case *Brown v. Brown,* 1 S.C.Eq. (1 Des.) 196 (1789), that the family court's authority to grant this relief arises from its equitable powers and not any statutory requirements. South Carolina's family court system was created by statute in 1976, and this statutory framework now controls. As courts of limited jurisdiction, it is well-settled that family courts possess only such powers as are granted to them by statute. *Graham,* 340 S.C. at 355, 532 S.E.2d at 263. Accordingly, contrary to the dissent's view, the family court's authority emanates from section 20–3–130(B)(5), not from any equitable authority vesting the family courts with broad discretion. While we have refused to define specific grounds for a party to receive separate maintenance, those decisions are still valid only because the statute itself contains no grounds, not because of the family court's equitable jurisdiction.

time. *Barnes v. Barnes,* 276 S.C. 519, 520, 280 S.E.2d 538, 539 (1981). Our rationale was that otherwise, evidence of the actual separation, which is the gravamen of a no-fault divorce, would exist only "behind the closed doors of the matrimonial domicile," thus encouraging collusion between the parties. *Id.* The same rule applies if the parties seek a divorce on the fault ground of desertion. *Watson v. Watson,* 319 S.C. 92, 94, 460 S.E.2d 394, 395 (1995).

On the other hand, citing public policy concerns and the diminished threat of collusion or condonation, we refused to extend that rule to parties seeking a fault-based divorce on any other ground. *Id.* at 94, 460 S.E.2d at 395–96. As we stated in *Watson,* in those fault-based situations it is better to permit the separating spouse to remain in the home at the time of filing, and have custody and other living arrangements dealt with at a temporary hearing, than to require that spouse to vacate the home and potentially cause more disruption in the family's life at the time of filing. *Id.* at 94, 460 S.E.2d at 395.

■ The public policy concerns that drove our decision in *Watson* are not present here. Therefore, in order to state a claim for separate maintenance, the complaint must allege that the parties are living separate and apart. To hold otherwise would permit spouses to inundate the family court with claims following relatively minor disputes and quarrels. Because there are no defined grounds for this relief, parties could bring an action in the family court for almost any reason absent some threshold requirement. Requiring spouses to separate stems this tide by helping guarantee that court intervention into the marital relationship actually is truly necessary because the grounds underlying the complaint will at least be enough to warrant leaving the marital home.

■ Furthermore, living separate and apart must involve more than the cessation of the parties' romantic relationship. "The overwhelming weight of authority as to what is meant by living 'separate and apart' . . . implies something more than a discontinuance of sexual relations. . . . It implies the living apart . . . in such a manner that those in the neighborhood may see that the husband and wife are not living together." *Boozer v. Boozer,* 242 S.C. 292, 296–97, 130

S.E.2d 903, 905 (1963) (internal citations and quotations omitted); *accord Whitman v. Whitman,* 223 Ala. 557, 137 So. 666, 666 (1931) ("The bill does not make out such a case when it shows that there has been an abandonment or separation and that the complainant and respondent were living together as man and wife when the bill or petition was filed."); *Hemphill v. Hemphill,* 84 Ariz. 95, 324 P.2d 225, 228 (1958) ("A wife's action for separate maintenance generally presupposes a separation...."); *Kesterson v. Kesterson,* 21 Ark. App. 287, 731 S.W.2d 786, 788 (1987) ("All that must be established are a separation and an absence of fault."); *Baumgartner v. Baumgartner,* 16 Ill.App.2d 286, 148 N.E.2d 327, 330 (1958) ("A complaint lacking an allegation that the parties are living separate and apart without fault on the part of the plaintiff fails to state a cause of action."); *Lynch v. Lynch,* 616 So.2d 294, 296 (Miss.1993) ("It is well-established that '[a] decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they be reconciled to each other.' " (citations omitted)). Thus, prior to petitioning the court for separate maintenance, the parties must live in separate domiciles.

■■■ The dissent relies, in part, on *Murray v. Murray,* 271 S.C. 62, 244 S.E.2d 538 (1978) and *Gainey v. Gainey,* 382 S.C. 414, 675 S.E.2d 792 (Ct.App.2009) in support of its position that living separate and apart is not a prerequisite for instituting an action for separate maintenance. However, neither of those cases is dispositive of the issue before us today. In *Murray,* the parties were still living together at the time they received separate maintenance.[5] 271 S.C. at 63–64, 244 S.E.2d at 539. However, the issue before the Court was whether the husband condoned the wife's misconduct by remaining in the house, not whether he failed to plead the elements of separate maintenance. *Id.* Therefore, as we stated at the outset of this

---

5. The opinion states that the parties were granted a legal separation. *Murray,* 271 S.C. at 63, 244 S.E.2d at 539. Although legal separations are not available under South Carolina law, this term is often inadvertently used interchangeably with separate maintenance. *Brewer v. Brewer,* 242 S.C. 9, 20, 129 S.E.2d 736, 741 (1963) (Bussey, J., concurring). Because this was not challenged in *Murray,* we assume this is what occurred.

opinion, the issue before us is one of first impression for the Court. It is well-settled that even though an appellate court has decided a case containing a certain issue, unless that issue was actually raised on appeal those cases are not dispositive. *Cf. Breland v. Love Chevrolet Olds, Inc.*, 339 S.C. 89, 95, 529 S.E.2d 11, 14 (2000) ("The fact that an appellate court may have decided an appeal of a particular type of order on the merits is not dispositive of whether the order is appealable when the issue of appealability was not raised."); *Wallace v. Interamerican Trust Co.*, 246 S.C. 563, 569, 144 S.E.2d 813, 816 (1965) (holding that even though the court previously heard interlocutory appeals, issue of whether such orders were actually appealable had not been raised). Indeed, the dissent's author has himself recognized this principle. *See Lewis v. Lewis*, 392 S.C. 381, 400 n. 14, 709 S.E.2d 650, 660 n. 14 (2011) (Pleicones, J., dissenting); *Bursey v. S.C. Dep't of Health and Envt'l Control*, 369 S.C. 176, 190, 631 S.E.2d 899, 907 (2006) (Pleicones, J., dissenting) ("[T]he fact that we have applied the APA standard in a previous Mining Council appeal where the parties did not contest the standard of review does not bind us in this case where the matter is properly preserved and presented for our review.").

As to *Gainey*, the court of appeals merely held that the issue of the family court's authority to approve an agreement for separate maintenance when the parties still lived together was not preserved for review. 382 S.C. at 424–25, 675 S.E.2d at 797. Contrary to the dissent's view of *Gainey*, it did not hold that Rule 60(b), SCRCP, is inapplicable to separate maintenance decrees even though the parties are residing together; it held that because the wife knew they were living together at the time of the hearing, she could have raised that issue at the hearing and was therefore barred from raising it afterwards pursuant to Rule 60(b). *Id.*

We are also perplexed by the dissent's belief that our holding somehow discourages reconciliation between spouses. It is beyond question that the public policy of this State favors the institution of marriage, and it is our belief that acrimonious litigation does far less to preserve the marital bond than the requirements we impose today. Thus our concern goes beyond the fact that parties may institute litigation and then withdraw should they reconcile; it extends to the relative ease

with which parties might otherwise bring their minor disputes into the spotlight of the family court, thereby working irreparable damage to the family unit. The potential for unnecessary litigation will work more harm to a marriage than the requirement that a spouse's discontent with the marriage ordinarily must be sufficient for him or her to leave the marital home prior to receiving separate maintenance.

 Living separate and apart therefore is a prerequisite to petitioning for an award of separate maintenance. Because Wife never alleged she was living separate and apart from Husband, the family court did not err in dismissing her complaint under Rule 12(b)(6), SCRCP.

### III. *LIS PENDENS* AND ATTORNEY'S FEES

Finally, Wife argues the family court erred in cancelling the *lis pendens* she filed on Husband's rental properties and not awarding her attorney's fees. In light of our conclusion that she has failed to state a claim, we disagree.

 A *lis pendens* essentially is another form of a pleading in a case. *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 30, 567 S.E.2d 881, 896 (Ct.App.2002). "It is premised upon and must be filed in time [and] in conjunction with an underlying complaint involving an issue of property." *Id.* A *lis pendens* must be filed "not more than twenty days before the filing of the complaint or at any time afterwards." S.C.Code Ann. § 15–11–10 (2005). It is therefore a derivative right, and its validity depends not only on the timeliness of its filing in relation to the underlying complaint, but on the validity of the complaint as well. Because we find Wife's complaint fails to state a claim, there is no valid complaint on which Wife's *lis pendens* can be premised. Accordingly, the family court did not err in cancelling it.

 In considering whether to award a party attorney's fees, the court must consider the party's ability to pay his own fees, the beneficial results obtained by the party's attorney, each party's respective financial conditions, and the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). Given our affirmance of the family court's dismissal of Wife's

complaint, she did not achieve any beneficial results. We therefore affirm the court's denial of attorney's fees to Wife.

## CONCLUSION

We affirm the order of the family court dismissing Wife's complaint for separate maintenance because she failed to allege that she and Husband were living separate and apart at the time of filing. Furthermore, because Wife's *lis pendens* and claim for attorney's fees hinge on the validity of her complaint, we find no error in the family court's denial of that relief to Wife.

TOAL, C.J., and KITTREDGE, J., concur.

PLEICONES, J., concurring in part and dissenting in part in a separate opinion in which BEATTY, J., concurs.

Justice PLEICONES.

I concur in part and dissent in part. I agree with the majority that the family court did not find a jurisdictional defect in wife's complaint. *See Gainey v. Gainey*, 382 S.C. 414, 675 S.E.2d 792 (Ct.App.2009). I disagree, however, that either as a matter of pleading or of policy a married couple must be living separate and apart in order to bring an action for separate maintenance and support. I would therefore reverse the family court order to the extent it dismissed the complaint and cancelled the *lis pendens.*

Although South Carolina did not permit divorce until 1949,[6] the equity courts "without any Legislative act, or other authority, began to exercise jurisdiction in case for alimony, *Brown v. Brown*, 1 Eq. R. 196. A.D. 1785,[7] not as in England, as incident to suits for divorce, (for no divorce has ever been allowed in this State,) but as a separate and distinct ground for equitable relief. *Julineau v. Julineau*, 2 Des. 45 A.D. 1787." [8] *Hair v. Hair*, 31 S.C.Eq. (10 Rich.Eq.) 163 (S.C.App.

---

6. Except for the period 1872 to 1878, when divorce on the ground of adultery or willful desertion was permitted by statute. *See Brown v. Brown*, 215 S.C. 502, 56 S.E.2d 330 (1949).

7. Reported as *Brown v. Brown*, 1 S.C.Eq. (1 Des.) 196 (1789).

8. Reported as *Jelineau v. Jelineau*, 2 S.C.Eq. (2 Des.) 45 (1801).

Eq.1858). Although originally this equitable relief was available only to those who could establish fault that would be grounds for divorce in England, *Rhame v. Rhame*, 6 S.C.Eq. (1 McCord Eq.) 197 (S.C.App.1826), this requirement was relaxed overtime, leaving the question whether to grant a decree of separate maintenance and support to the court's broad discretion. *Machado v. Machado*, 220 S.C. 90, 66 S.E.2d 629 (1951). The equitable authority to grant this relief has devolved upon the family court, but remains a matter of discretion, not bound by statutory requirements.

This State's long established public policy favors preservation of marriage, and encourages and promotes reconciliation between spouses. *Towles v. Towles*, 256 S.C. 307, 182 S.E.2d 53 (1971). It is "the sundering of the marriage ties" which our public policy seeks to avoid by its strict construction of the grounds for divorce. *E.g. Mincey v. Mincey*, 224 S.C. 520, 80 S.E.2d 123 (1954) (constructive desertion is ground for divorce only where leaving spouse left because of other spouse's conduct which amounted to a fault ground for divorce); *Nolletti v. Nolletti*, 243 S.C. 20, 132 S.E.2d 11 (1963) (spouse must have been deserted for at least a year prior to commencement of divorce action on this ground); *Shaw v. Shaw*, 256 S.C. 453, 182 S.E.2d 865 (1971) (separation caused by one spouse's insanity cannot be basis for divorce). Because our public policy requires that courts strictly construe the grounds for divorce, our decisions have been especially concerned with preventing collusive divorces. *E.g., Brown v. Brown, supra.* Collusiveness is not an issue in a separate maintenance and support action, which does not require a fault ground or a physical separation for at least a year preceding commencement of a divorce action.

The majority takes the State's public policy strongly favoring marriage over divorce, and applies it to impose new obstacles to those seeking only separate maintenance and support, a non-terminal type of marital litigation which carries with it a greater hope of reconciliation. Moreover, because our public policy encourages reconciliation, I do not understand the majority's concern with those who commence but then withdraw marital litigation.[9]

9. One need only look at this couples' history, which includes two prior domestic filings by Wife before she initiated this suit. I do not perceive

The majority relies in part upon the statutory provision that terminates separate maintenance and support awards upon "continual cohabitation." S.C.Code Ann. § 20–3–130(B)(5) (Supp.2010). Continual cohabitation is defined as "the supported spouse resides with another person in a **romantic relationship** for a period of ninety consecutive days." S.C.Code Ann. § 20–3–130(B) (Supp.2010) (emphasis supplied). It is not merely living in the same residence which is required, but also a romantic relationship, ordinarily with a third person (though the resumption of cohabitation with a spouse would have the same effect) which provides the statutory basis for ending support. Unlike the majority, as I read § 20–3–130(B)(5), the purpose of separate maintenance and support is to provide the financial means necessary for the parties to be able to live separate and apart, not to require them to already be living in separate residences as a prerequisite to such an action.

I also disagree with the majority's decision to "borrow" the requirement that parties seeking a divorce based on either desertion or one year's separation must be separated when the action is commenced, and import it into a separate maintenance and support action as a pleading requirement. I see nothing in our precedents or in our rules [10] which require a person plead separation in her separate maintenance and support complaint. If anything, precedent and legislation suggest [11] that no such separation is required. *Murray v. Murray*, 271 S.C. 62, 244 S.E.2d 538 (1978) (no condonation in separate maintenance and support suit where husband stayed in home with wife); S.C.Code Ann. § 20–3–130(G) (Family Court may approve alimony or separate maintenance and support agreements "in actions for divorce ... separate maintenance and support actions, or in actions to approve agreement where the parties are living separate and apart"); *see also Gainey, supra* (separate maintenance and support decree

---

any empirical support for the majority's belief that requiring physical separation before the filing of a separate and maintenance action will reduce the number of "minor disputes" inundating the family courts.

**10.** *See* Rule 9, SCRCP, "Pleading Special Matters."

**11.** I agree with the majority that this case presents a novel question, and find "suggestions," not binding authority, in our precedents.

not subject to Rule 60(b), SCRCP relief even though parties resided in same home until day of merits hearing).

In my opinion, public policy does not require parties live in separate residences in order to bring a separate maintenance and support suit. Instead, I would allow such a suit where the parties no longer have a "romantic" relationship. We allow a divorce action to be brought where the parties share a residence, *Watson, supra,* and have allowed a separate maintenance and support suit under the same circumstances. *Murray, supra.* Both *Watson* and *Murray* recognize the hardship placed on a parent in a custody situation if the parent must leave the home in order to commence marital litigation. In a similar vein, public policy should recognize that financial impossibility may prevent a spouse from establishing a separate residence prior to receiving court-ordered support. We should not deny access to the family court to a party who must, of financial necessity, remain in the marital abode.

I would hold that living separate and apart is not a prerequisite to the bringing of a separate maintenance and support action. I therefore concur in part and dissent in part.

BEATTY, J., concurs.