**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

South Carolina Department of Social Services, Respondent,

v.

Patrecse Miller and Aqien Miller, Defendants,

Of Whom Patrecse Miller is the Appellant,

In the interest of a minor child under the age of eighteen.

Appellate Case No. 2014-000429

_____

Appeal From Richland County
John M. Rucker, Family Court Judge

_____

Unpublished Opinion No. 2015-UP-166
Heard February 25, 2015 – Filed March 26, 2015

_____

**REVERSED AND REMANDED**

_____

John Clark Phillips, Jr., of Law Office of John C.
Phillips, Jr., of Columbia, for Appellant.

Dottie C. Ingram, of the South Carolina Department of
Social Services, of Anderson, for Respondent.

Angela L. Kohel, of Richland County CASA, of
Columbia, for the Guardian ad Litem.

**PER CURIAM:**  Patrecse Miller (Mother) appeals the family court's order
terminating her parental rights to her minor child (Daughter).  On appeal, Mother
argues clear and convincing evidence does not support the statutory ground for
termination of parental rights (TPR).[1]  We reverse and remand.

In September 2012, Mother took Daughter to a four-month-old well-baby visit, and
the pediatrician referred Mother to the hospital to investigate some injuries.  While
at the hospital, Mother was informed Daughter would be placed in emergency
protective custody.

At the merits hearing, the family court concluded, based on circumstantial
evidence and by a preponderance of the evidence, Mother and Aqien Miller
(Father) abused Daughter.  The family court made the following findings to
support its conclusion:

> 4.  At the time of [Daughter's] removal . . . she was
> approximately 18 1/2 weeks old.  At that time, the
> following injuries to [Daughter] were diagnosed by staff
> at Palmetto Richland Children's Hospital: (1) two
> cerebral hematomas that could be explained by either
> shaken baby syndrome or blunt-force trauma; with one
> occurring within approximately seven to twenty-one days
> prior to the date of the evaluation and one occurring over
> thirty days prior to the evaluation; (2) a broken arm at the
> elbow that could be explained by a hyperextension of
> [Daughter's] arm and that occurred approximately four to
> eight weeks prior to the evaluation; and (3) broken ribs
> that could be explained by a squeezing force applied to
> [Daughter's] body and that occurred approximately four

---

[1] Mother does not contest the family court's finding that TPR was in Daughter's
best interest.  *See* S.C. Code Ann. § 63-7-2570 (Supp. 2014) (noting the family
court may order TPR "upon a finding of one or more of the [statutory] grounds and
a finding that termination is in the best interest of the child").

to eight weeks prior to the evaluation.  The injuries were at various stages of healing and occurred to [Daughter] over the course of time when [Daughter] was approximately two to four months of age.

5.  Dr. Olga Rosa, who was stipulated by the parties as an expert in child abuse pediatrics, testified to a reasonable degree of medical certainty that: (1) the injuries suffered by [Daughter] were consistent with non-accidental trauma; (2) none of these injuries could have occurred except by child abuse; and (3) [Daughter] could not have suffered these injuries on her own accord.  Dr. Rosa also testified that she excluded all other medical possibilities for these injuries, including brittle bone syndrome and rickets. . . .

6.  [Mother] and [Father] . . . had no explanation for these injuries other than trauma to the arm at the birth of [Daughter], which Dr. Rosa discounted as a possible source of injury.

7.  This case is before the Court because [Daughter] had a head circumference that was between the 25th and 50th percentile; then on July 25, 2012, her head circumference was in the 90th percentile; and then on September 6 and 17, 2012, her head circumference was off the charts.  The parents had no explanation and the pediatrician referred [Daughter] for further evaluation.

8.  The parents did take [Daughter] to the doctor a lot in May and June of 2012, and there was no indication in May or June 2012 that [Daughter] was suffering from any injuries.  [Daughter] was seen on July 11, 2013 [sic] by her pediatrician for bladder issues and on July 25, 2013 [sic] for a wellness visit.  [Daughter] was seen by an emergency room doctor on August 11, 2013[,] after [she] exhibited symptoms of abrasions on the tongue and excessive mucus.  No CAT scans or X-rays were

> completed . . . ; however, Dr. Rosa testified that the
> symptoms were likely the result of a head injury. . . .

Following the merits hearing, DSS entered into treatment plans with Mother and Father, both parents substantially complied with the treatment plans, and DSS's plan was reunification.

When Mother gave birth to another child (Son), DSS conducted a home study and determined it did not need to take Son into protective custody. However, when Son was seven weeks old, Father drove him to the hospital due to severe injuries. Son died a few days later, and Father confessed he caused the injuries by shaking Son. Father later admitted he caused Daughter's injuries, although he denied Mother was aware he caused them.

Three days after Son's death, DSS filed a TPR action based upon one statutory ground: a child was harmed while in the parents' home, and due to the severity or repetition of the abuse or neglect, it was not reasonably likely the home could be made safe within twelve months. The TPR hearing focused primarily on Father's abuse of Son, which led to his death. At the hearing, DSS asked the family court to take judicial notice of all prior orders, including the merits order. It presented the testimony of two police officers, a DSS caseworker, and Mother. DSS did not present any other witnesses or experts.[2] The family court terminated Mother's and Father's parental rights, and this appeal followed.

"Because terminating the legal relationship between natural parents and a child is one of the most difficult issues an appellate court has to decide, great caution must be exercised in reviewing termination proceedings and termination is proper only when the evidence clearly and convincingly mandates such a result." *S.C. Dep't of Soc. Servs. v. Roe*, 371 S.C. 450, 455, 639 S.E.2d 165, 168 (Ct. App. 2006). On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *see also Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, this court is not required to "ignore the fact that the [family court], who saw and heard the witnesses, was in better position . . . to evaluate their credibility" and assign comparative weight to

---

[2] Both the guardian ad litem (the GAL) and the former GAL testified as part of the GAL's case.

their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 652 (quoting *Inabinet v. Inabinet*, 236 S.C. 52, 55-56, 113 S.E.2d 66, 67 (1960)). The burden is upon the appellant to convince this court that the family court erred in its findings. *Id.*

The family court may order TPR upon finding at least one statutory ground is satisfied and also finding TPR is in the best interest of the child. S.C. Code Ann. § 63-7-2570 (Supp. 2014). The grounds for TPR must be proven by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999). A statutory ground for TPR is met when

> the child or another child while residing in the parent's domicile has been harmed as defined in Section 63-7-20, and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months. In determining the likelihood that the home can be made safe, the parent's previous abuse or neglect of the child or another child may be considered.

S.C. Code Ann. § 63-7-2570(1) (Supp. 2014). Harm occurs when a parent "engages in acts or omissions which present a substantial risk of physical or mental injury to the child." S.C. Code Ann. § 63-7-20(4)(a) (2010).

It is undeniable that both children were harmed while in Mother's home. Thus, the first element of this statutory ground—harm—has been met. We must next consider whether, due to the severity or repetition of the abuse or neglect, Mother's home can be made safe. Clear and convincing evidence established that Father injured the children. Father admitted to injuring both Son and Daughter, and he told investigators that he did not tell Mother what he did. Additionally, police confirmed Mother was not home when Son was injured. Because Mother no longer planned to be with Father, and because Father recently pled guilty to criminal charges and will face prison time, the threat of Father is removed from Mother's home. With Father removed from the home, we find that clear and convincing evidence does *not* show Mother's home cannot be made safe.

The record contains some evidence showing that due to the severity and repetition of Daughter's abuse, it was not reasonably likely Mother's home could be made safe. According to the merits order, which was read into the record, a medical expert testified at the merits hearing that Daughter's injuries were caused by abuse

and would have caused noticeable symptoms. The family court determined Mother's testimony at the merits hearing that she did not notice the injuries was not credible. A police officer testified Daughter's injuries "were so severe, that both parents would have had to have known that there was something wrong with [her]." Mother admitted Daughter was severely injured, explaining Daughter had an elbow fracture, more than one rib fracture, and more than one subdural hematoma. The DSS caseworker testified Daughter was removed "due to the bleeding to the brain, fractured ribs and arm." The GAL testified that due to the severity of Daughter's injuries, he believed a reasonable parent "would have noticed the severity of the pain [Daughter] was going through." Finally, the GAL in the removal action stated Mother was manipulative and frequently changed her story.

However, this evidence does not rise to the level of clear and convincing evidence, which due process requires in order to protect a parent's "fundamental liberty interest in the care, custody, and management of their children." *S.C. Dep't of Soc. Servs. v. Michelle G.*, 407 S.C. 499, 505, 757 S.E.2d 388, 391 (2014). Although the merits order contained findings based upon an expert's testimony that Daughter's injuries were severe and would have caused noticeable symptoms, the standard for a merits hearing is a preponderance of the evidence, whereas the standard for TPR is clear and convincing evidence. *See Greenville Cnty. Dep't of Soc. Servs. v. Bowes*, 313 S.C. 188, 193, 437 S.E.2d 107, 110 (1993) (finding it was error to rely on a finding of abuse in the removal order at a TPR hearing because "[i]n a removal action, as opposed to a termination proceeding, abuse need only be shown by a *preponderance* of the evidence"), *superseded on other grounds by statute*, S.C. Code Ann. § 63-7-2570 (Supp. 2014) (formerly codified at S.C. Code Ann. § 20-7-1572), *as recognized by Hooper v. Rockwell*, 334 S.C. 281, 296 n.6, 513 S.E.2d 358, 366 n.6 (1999) (noting the legislature amended the TPR statute to require the family court to "make the additional finding that [TPR] is in the best interest of the child"). Thus, as compelling as the merits order is, we cannot rely on it to determine, to a clear and convincing standard, the severity and repetition of Daughter's harm was such that Mother's home could not be made safe.

If, as DSS argued, Daughter's injuries were severe enough to show Mother's home cannot be made safe because Mother lacked a protective capacity, then DSS should have presented evidence to support that position. However, the record lacks clear and convincing evidence showing that, due to the severity or repetition of Daughter's abuse, it is not reasonably likely Mother's home could be made safe. Further, we find the subsequent harm to Son does not establish that Mother's

home—without Father—cannot be made safe because the uncontradicted evidence showed Mother was not home when that injury occurred.

Accordingly, we reverse the decision of the family court and remand this case for a permanency planning hearing pursuant to section 63-7-1700 of the South Carolina Code (2010 and Supp. 2014). A permanency planning hearing will allow all parties and the GAL an opportunity to update the family court on what has occurred since the TPR hearing. We urge the family court to conduct a hearing as expeditiously as possible, including presentation of a new GAL report. If necessary, the family court may, *inter alia*, change custody, modify visitation, and approve a treatment plan offering additional services to Mother.

**REVERSED AND REMANDED.**

**FEW, C.J., and THOMAS and LOCKEMY, JJ., concur.**